UNITED STATES

v.

**Staff Sergeant Steven N. SCHAPER,
FR089–56–2534 United States Air
Force.**

ACM 31189.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 13 Oct. 1993.

Decided 24 Feb. 1995.

Appellate Counsel for Appellant: Colonel Jay L. Cohen and Captain Robert E. Watson.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise and Colonel Thomas E. Schlegel.

Before DIXON, YOUNG, and BECKER, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Senior Judge:

A military judge convicted appellant of dishonorably failing to pay debts, pursuant to his pleas, and larceny, contrary to his pleas. Articles 134 and 121, UCMJ, 10 U.S.C. §§ 934, 921 (1988). The military judge sentenced appellant to a bad-conduct discharge, confinement for 7 months, and reduction to E–3. The convening authority disapproved the conviction for dishonorably failing to pay debts, but approved the sentence as adjudged. Appellant asserts the evidence is factually and legally insufficient to support his conviction of larceny. We disagree and affirm.

## I. Facts

The prosecution's evidence consisted of a stipulation of fact and documents which were incorporated by reference therein. On 13 March 1992, appellant "freely and willingly" applied for a Citicorp Diners Club card through the Diners Club Government Card Program. The purpose of the program is to eliminate the need for cash advances and provide a means of expense accounting for Air Force members who frequently travel on official business. Although apparently based on a contract between the United States Government and Citicorp, the actual Diners Club agreement was between Citicorp and appellant. By signing the application form, he agreed to be bound by the terms and conditions of the Diners Club Government Card Program Employee Card Account Agreement accompanying the card and acknowledged that the card was to be used only for official government business. Before applying for the card, appellant certified that he had read, understood, and agreed to abide by the provisions of the Employee Card Account Agreement. That agreement states that the Diners Club card and account were "not to be used for personal purposes and may only be used in connection with official United States Government business." Appellant also applied for a personal identification number (PIN) so he could use the card to make cash withdrawals from automated teller machines (ATM). To do so, he signed the application form, agreeing to be bound by the terms of the employee agreement. That agreement states, in part:

The Government ATM Program is provided by Diners Club under the authority of my Agency. The Program may not be used for personal purposes and may only be used in connection with official United States Government business. ATM cash withdrawals must be authorized by a travel authorization and are subject to applicable regulations of my Agency with respect to travel advances.

. . . .

. . . . ATM cash withdrawals must be authorized by my travel authorization, and I may not withdraw any amount which is in excess of any limitation upon withdrawals contained in such travel authorization.

. . . .

I understand that I may not obtain an ATM cash withdrawal for any purpose other than for official United States Government business and that no other person is permitted to use the Card or my Account for any reason.

. . . .

. . . . Obtaining an ATM cash withdrawal for any purpose other than for official travel is specifically prohibited.

Air Force regulations provide that Air Force members can receive cash travel advances only incident to a travel authorization for official Government travel.

On 16 occasions between 22 December 1992 and 15 February 1993, appellant used this Diners Club card and PIN to withdraw a total of $4,110 from ATM machines for purposes other than official United States Government business—to cover bad checks he had written, to buy Christmas presents, and

to pay for liquor and shooting pool. On 4 March 1993, when confronted by his first sergeant about the use of his Diners Club card, appellant denied that he had ever used the card or had given his card or PIN to anyone else to use and admitted he had not been on government official travel. Appellant made similar representations to Diners Club in an affidavit he prepared with the assistance of the first sergeant. Appellant was not charged for these false statements. Appellant was aware that charges made on his Diners Club were his own personal financial responsibility, not those of the government.

## II. Standards of Review

Under Article 66(c), UCMJ, 10 U.S.C.A. § 866(c), this Court has a duty to determine both the legal and factual sufficiency of the evidence. The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt. The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are personally convinced of appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

## III. Discussion

To prove larceny, the prosecution must show that the accused wrongfully took, obtained, or withheld the property of another with the intent permanently to appropriate it to his own use and benefit or to deprive the owner of its use or benefit. Article 121, UCMJ; *Manual for Courts–Martial, United States, 1984* (MCM), Part IV, ¶ 46; *see United States v. Antonelli*, 35 M.J. 122, 127 (C.M.A.1992). The prosecution proceeded on a theory of larceny by false pretenses (wrongfully obtaining) and the military judge adopted findings of fact and conclusions of law based on that theory.

A false pretense is a false representation of past or existing fact. In addition to other kinds of facts, the fact falsely represented by a person may be that person's or another's power, authority, or intention.... Although the pretense need not be the sole cause inducing the owner to part with the property, it must be an effective and intentional cause of the obtaining. MCM, Part IV, ¶ 46c(1)(e). "[T]he false pretense may be made by means of any act, word, symbol, or token. The pretense must be in fact false when made and when the property is obtained, and it must be knowingly false in the sense that it is made without a belief in its truth." *Id.* The false representation may be implied from unwritten and unspoken conduct. Wayne R. LaFave & Austin W. Scott Jr., *Criminal Law* 656 (1972); *see* 3 Charles E. Torcia, *Wharton's Criminal Law* § 426 (14th ed.1980). A false pretense may also occur through the failure to correct a representation previously made which is no longer true. The individual's "silence at the moment, with full knowledge of what is happening, is the equivalent of a repetition of the statement at the very moment of acquisition." Rollin M. Perkins, *Perkins on Evidence* 311 (2d ed.1969); *see United States v. Dean*, 33 M.J. 505, 510 (A.F.C.M.R.1991). It is of no consequence that the representations are made to a machine as opposed to a human representative of the person relinquishing title to the property. *See United States v. Flowerday*, 28 M.J. 705 (A.F.C.M.R.1989) (by directly dialing long distance calls on another's telephone, accused "was implicitly representing to the telephone company that he was the owner or a duly authorized user of that instrument and, further, that he or the owner intended to pay for the service").

In making withdrawals from the ATMs with the Diners Club card issued under the Government Employee Program, appellant made three implicit representations: (1) that he was authorized to use the particular Diners Club card he inserted into the ATMs to withdraw funds; (2) that he was authorized by a travel authorization to withdraw that amount of money from the ATMs; and (3) that the ATM cash withdrawals were obtained for official Government business related to his official travel.

The first representation was true. Unlike other military cases which discuss false pre-

tenses, appellant had applied for and been granted this Diners Club card and was authorized to use it in ATMs. The prosecution's proof on the second and third representations is legally and factually sufficient to show that appellant had not received a travel authorization and the ATM cash withdrawals were obtained for other than matters related to official government travel: (1) on 4 March 1993, appellant admitted, in written answers to his first sergeant's questions, that he had not been on government official travel or TDY since the Diners Club card was issued to him on 13 March 1992; and (2) appellant confessed to the AFOSI that he used the ATM withdrawals for other than official government business—to pay off bad checks, to buy Christmas presents, to pay for liquor, and to pay for shooting pool.

Appellant's challenge to the legal sufficiency of the evidence is based on two separate theories: (1) he cannot be convicted of larceny for what is essentially a failure to pay a contractual obligation; and (2) the prosecution's evidence failed to prove Diners Club would not have provided the money absent the misrepresentation. We will examine each of these assertions.

■ It is settled law that "a debt or the amount thereof is not the proper subject of a larceny under Article 121." *United States v. Mervine*, 26 M.J. 482, 483–84 (C.M.A.1988). "The taking, obtaining or withholding must be of specific property. *A debtor does not withhold specific property from the possession of a creditor by failing or refusing to pay a debt, for the relationship of debtor and creditor does not give the creditor a possessory right in any specific money or other property of the debtor." Mervine*, 26 M.J. at 484 (quoting MCM, Part IV, ¶ 46c(1)(b) (emphasis added). Mervine was convicted of attempted larceny of money from the Navy Exchange. He had purchased some electronic equipment under the deferred payment plan from the Navy Exchange in Naples, Italy. After his assignment to Diego Garcia, he failed to make payments to the Navy Exchange, altered a postal money order receipt to reflect his payment of the debt, and sent the Exchange the altered receipt and a letter stating he had paid the debt.

The Court of Military Appeals held that Mervine could not be convicted of attempted larceny. The object of a larceny, under Article 121, UCMJ, must be a tangible *res*, which a lawfully contracted debt is not.

When appellant inserted the Diners Club card into the ATM, he did not have a preexisting debt with Citicorp which he was attempting to avoid by false representations. Instead, he wrongfully obtained money, a tangible *res*, by making material misrepresentations to Citicorp through the ATM. The fact that appellant had a previous contractual relationship with Citicorp authorizing him to withdraw money from ATMs under limited circumstances does not preclude his conviction for larceny when his knowing misrepresentations as to his compliance with the terms of the contract effectively and intentionally induce Citicorp to part with its money.

The offense of which appellant was convicted is not unlike that of larceny by check. An individual who makes and utters a check, drawn on his own account, knowing that the bank will not pay on presentment because of insufficient funds in his account may be charged with and convicted of larceny by false pretenses. *See United States v. Marrelli*, 4 U.S.C.M.A. 276, 15 C.M.R. 276 (1954). The individual who makes and utters the check makes two representations: (1) that he is authorized to use the specific account number on the check; and (2) that the account contains sufficient funds such that the check will be paid upon presentment. The false pretense is the implied representation that funds will be available to pay the check upon its presentment.

We distinguish appellant's case from that of a person who unknowingly, or with the approval of the credit card company, exceeds the credit limit on his card. In those cases, there is no false pretense.

■ We find appellant's claim that the prosecution failed to prove Diners Club would not have provided appellant the money absent the misrepresentation is without merit. Although the preferable course would have been for the prosecution to present testimony from an officer of the credit card

company, in this case, the terms of the contract are sufficiently clear and unambiguous for a factfinder to conclude that the money would not have been provided absent the misrepresentation. *Marrelli*, 15 C.M.R. at 280 ("it was readily inferable that the accused knew the bank would not have paid the checks on presentment.")

The evidence was sufficient for a reasonable fact-finder to find appellant committed all the essential elements of the offense of larceny beyond a reasonable doubt. Furthermore, we ourselves are convinced beyond a reasonable doubt of appellant's guilt of larceny. Appellant wrongfully obtained money from Citicorp Diners Club with the intent permanently to appropriate the same to his own use and benefit.

## IV. Conclusion

The findings and sentence are correct in law and fact, and we find no errors prejudicial to appellant's substantial rights. Accordingly, the findings and sentence are

AFFIRMED.

DIXON, Chief Judge (concurring).

I concur fully with the opinion by Senior Judge Young and write separately only to comment upon, and express my disagreement with, some of the views expressed by the dissenting judge about the effects of this opinion. This opinion does not cause the sky to fall, the earth to shake, Pandora's Box to open, or the law of larceny to be misused. A military member violates Article 121, UCMJ, when he wrongfully takes or obtains money belonging to another with the intent to deprive the owner of it. That's exactly what appellant did in this case.

There can be no disagreement that appellant understood what he was doing was unlawful. His denials that he had ever used the card, and contentions that he had no knowledge that the card had ever been used by anyone, are particularly telling about his intentions. It is clear that he fully intended to obtain money to which he was not entitled. And there is no doubt whatsoever that he intended to use the money which he wrongfully obtained for his own benefit. This opinion says nothing more than, on the facts of this case, the majority has determined the findings of guilty to the offense of larceny are legally and factually sufficient. *United States v. Antonelli*, 35 M.J. 122 (C.M.A.1992).

In affirming this case, we reject any contention that appellant's conduct amounted to no more than a breach of contract. It was appellant's *intent* at the time he obtained the monies that makes his conduct a larceny and separates it from a mere breach of contract. The dissent's suggestion that appellant's conduct was no different than exceeding the credit limit on a personal credit card and that this Court would treat the two behaviors in the same way is just plain wrong. In this instance, we find appellant had no authority to obtain money from the ATM machines for purely personal purposes. Comparisons which the dissent makes to cardholders exceeding credit limits and frequency of withdrawals are totally inapposite.

I do not agree with the author of the dissenting opinion that appellant's conviction depends upon proof of an obtaining by false pretenses. The distinctions between the common law theories of larceny were abolished when Article 121 was enacted. The words "false pretenses" simply can not be found anywhere within Article 121. While I am comfortable in affirming appellant's conviction on an "obtaining by false pretenses" theory, I do not agree that it is the only basis for upholding his conviction. Regardless of whether false pretenses were utilized, I am convinced beyond a reasonable doubt that the taking or obtaining of the monies by appellant was wrongful and was coupled with the intent to deprive the owners of the use of the money he acquired.

The following words in the discussion of Article 121 offenses in the Manual for Courts–Martial leave no doubt appellant's actions were sufficient to constitute larceny:

> As a general rule, however, any movement of property or any exercise of dominion over it is sufficient if accompanied by the requisite intent. Thus, if an accused enticed another's horse into the accused's stable without touching the animal, or procured a railroad company to deliver another's trunk by changing the check on it, or obtained the delivery of another's goods to

a person or place designated by the accused, or had the funds of another transferred to the accused's bank account, the accused is guilty of larceny if other elements of the offense have been proved.

MCM, Part IV, Paragraph 46c(1)(b) (1984)

The dissenting opinion suggests that, because appellant was issued a credit card pursuant to the Diners Club Government Card Program, he could use the card in any manner he chose. That view completely ignores the sole purpose for which the card was issued. The dissent would have us hold that a card issued for use in connection with official government business may be used to obtain money for any purpose, including supplementing the holder's income. That position has no support in law or fact. We create no bad law here. Applying the law to the facts, we find appellant violated Article 121, UCMJ, and affirm his conviction.

Judge BECKER (dissenting):

In this case, criminal law developed centuries ago runs headlong into late 20th Century technology. The challenge before this Court is to reconcile the law of larceny (and its lesser included offense of wrongful appropriation, both punished under Article 121, UCMJ[1]) with a modern world of credit cards, computers, and automatic teller machines, while preserving the law's underlying principles. Regrettably, the lead opinion fails in this task. Instead, the majority has gone beyond the intent of Congress, and effectively merged the law of larceny into the civil law of breach of contract. I cannot agree with this mutation of the criminal law. Therefore, I respectfully dissent.

### I. ARTICLE 121, UCMJ

Article 121 states, in pertinent part:

(a) Any person ... who wrongfully *takes, obtains, or withholds, by any means,* from

the possession of the owner or of any other person any money, personal property, or article of value of any kind—

(1) with intent permanently to deprive or defraud ... steals that property and is guilty of larceny; or

(2) with intent temporarily to deprive or defraud ... is guilty of wrongful appropriation.

(Emphasis added).

Thus, Article 121 "consolidates what had been known as common-law larceny (that is, larceny by trespass on either the actual or constructive possession of the owner), embezzlement, and obtaining by false pretenses—no more, no less...." *United States v. Antonelli,* 35 M.J. 122, 124 (C.M.A.1992). Congress did not intend Article 121 to address anything beyond the perimeter of these three "predicate offenses." *Id.* at 126. Bottom line—unless the appellant's conduct would have been either larceny by taking, embezzlement, or obtaining by false pretense at common law, it is not larceny under Article 121.

### II. LARCENY BY FALSE PRETENSE

Both the appellant and the government agree that, if the appellant's conduct violates Article 121 at all, it does so under a "wrongful obtaining" theory as a larceny by false pretense. The lead opinion accepts this premise, and so do I. In *Antonelli,* the Court of Military Appeals counseled against constructing analytical barriers between the three larceny variations when reviewing Article 121 convictions.[2] Notwithstanding, I see no plausible argument that the appellant's actions constitute larceny under either a wrongful "taking" or "withholding" theory. Therefore, we must look to the law of larceny by false pretense to see if the appellant's actions fit into Article 121.[3]

---

1. 10 U.S.C. § 921 (1994).

2. "[T]he fine subtleties that had conceptually (if not always logically) distinguished [the three common law offenses] are not material to guilt or innocence under Article 121 [footnote omitted]." *Id.* at 124.

3. In his concurring opinion, the Chief Judge does not agree that the appellant's conviction must

rest on an "obtaining by false pretense" theory, pointing out that Article 121 abolished the distinctions *between* the three common law offenses. In this latter point, the Chief Judge is correct. However, if the Chief Judge perceives this dissent to be just an exercise in pettifoggery over these distinctions, he is much mistaken. My problem with the majority holding is that it expands larceny and wrongful appropriation beyond any variation of those offenses addressed

The law of "false pretense" is fairly summarized at MCM, Part IV ¶ 46c(1)(e) (1984):

> With respect to obtaining property by false pretense, the false pretense may be made by means of *any act, word, symbol, or token.* The pretense must be in fact false *when made and when the property is obtained,* and it must be knowingly false in the sense that it is made without a belief in its truth. *A false pretense is a false representation of past or existing fact.* In addition to other kinds of facts, *the fact falsely represented by a person may be that person's or another's power, authority, or intention....* Although the pretense need not be the sole cause inducing the owner to part with the property, *it must be an effective and intentional cause of the obtaining....*

(Emphasis added). *See also United States v. Dean,* 33 M.J. 505, 510 (A.F.C.M.R.1991), and cases cited therein. Distilling this general rule into its essential components, the crime of larceny by false pretense requires that:

1. An accused *make* a false representation *at the time of the obtaining;* and

2. Such representation must, in some way, *induce the owner* to part with his, her, or its property.

The lead opinion holds, as a matter of law, that the appellant implicitly represented to an automatic teller machine (ATM) that his cash advances on the Diners Club card were for official Air Force business, and that Air Force authorities had approved the advances. The majority also finds beyond a reasonable doubt that the alleged victim of the larceny (Citicorp Diners Club), through the electronic and mechanical agency of the ATM, had been induced to part with its money because of such implied representations. I disagree on both counts.

### III. APPELLANT'S FALSE "REPRESENTATIONS"

I agree with the majority that a person may *imply* some representations at the time he or she obtains property or services. It is

*within* Article 121. Of the conduct which is properly within the scope of Article 121, the only

well established that users of credit or ATM cards implicitly represent they are the persons to whom the cards were issued. *See, e.g., United States v. Fairley,* 27 M.J. 582 (A.F.C.M.R.1988); *United States v. Cannon,* 26 M.J. 674 (A.F.C.M.R.1988); *United States v. Burge,* 25 M.J. 576 (A.F.C.M.R.1987); *United States v. Pulliam,* 17 M.J. 1066 (A.F.C.M.R.1984). Similarly, someone using another's telephone to make direct-dial toll calls implicitly represents to the telephone company that he or she has the authority to do so. *United States v. Flowerday,* 28 M.J. 705 (A.F.C.M.R.1989). I do not quarrel with the Navy–Marine Court of Military Review's holding in *United States v. Christy,* 18 M.J. 688 (N.M.C.M.R.1984), which affirmed a marine's larceny conviction for using a government credit card to purchase gasoline for his personal use. The Navy–Marine Corps court primarily relied on a "taking" theory—because the gas was billed to the government, its possessory interest in the gas was superior to that of the accused, who then "took" the gas by using it for personal errands. To the extent that court may have also relied on a "false pretense" theory, I would still agree with the result. When a principal gives an agent a credit card and authorizes certain uses which obligate the principal to pay the bill, I have no difficulty inferring a representation of authorized use whenever the agent presents the card. The common thread running through all these cases is that the implied representation concerns the user's *fundamental authority to use the card.* In other words, the implied representation is that *the user is the account holder, or has the authority to obligate the account holder.*

Here, the appellant was the account holder. His use of the Diners Club card obligated only himself. Appellant's wrong was not in his fundamental authority to use the card. Rather, he erred by using the card in a manner contrary to his contract with Diners Club, which required that he use the card only for official business and have Air Force approval for any cash advance. The majority imputes to the appellant, as a matter of law, an implicit representation that he was in

theory arguably applicable on these facts is "obtaining by false pretense."

compliance with these agreements whenever he used the card at an ATM. In so holding, the majority goes far beyond any precedent I have been able to locate, and expands the reach of Article 121 to conduct which Congress did not intend that article to address.

If this exercise in judicial legislation is allowed to stand, I fear we will have cracked open a "Pandora's Box" of potential Article 121 liability for garden variety breaches of contract. Many credit cards allow card holders to maintain a balance up to a maximum amount. If "Airman Able" uses his credit card, knowing that he will exceed his credit limit, does he violate Article 121? According to the majority, he does. The Diners Club ATM program agreement restricts ATM withdrawals to three per day, even if cash advances are otherwise approved. If "Lieutenant Baker" knowingly makes four ATM withdrawals one day, is she automatically guilty of the crime of wrongful appropriation? Again, the majority says she is. To be sure, these actions are breaches of contract, and justify civil and administrative remedies. As I will discuss below, they may also support prosecution under other articles of the UCMJ. But as for Article 121, I believe it is flat wrong to hold that card holders implicitly represent compliance with all covenants in their credit contracts whenever they use the card. Simple breach of contract is not what the common law or Congress envisioned for the crime of obtaining by false pretense.[4]

## IV. THE "INDUCEMENT" OF CITICORP DINERS CLUB

Even if I were to join in the majority's fusion of larceny and contract law, I am unable to find a shred of evidence that Citicorp was at all induced to part with its money because of the appellant's "representations." The lead opinion passes off this issue with a one-sentence reference to the terms of the contract as "sufficiently clear and unambiguous for a factfinder to conclude that the money would not have been provided absent the misrepresentation," and a citation to *United States v. Marrelli*, 4 U.S.C.M.A. 276, 15 C.M.R. 276 (1954), a larceny by check case that has nothing to do with credit cards or debt.[5] I see nothing in the credit agreement that remotely supports the majority's conclusion. Common sense points to the contrary. If "Sergeant Charlie" gives her credit card to a server at a restaurant, does the server worry whether "Charlie" has complied with all the terms of her agreement with the card company? Does the server even know what the contract says? Does he care? These answers are obvious—the only thing the restaurant cares about is whether the card is valid and the customer is a lawful user. If a human being has no interest in the terms of the credit contract, how can we impute such a concern to an ATM?

This musing aside, even if the majority's assumed inducement is true, there is nothing in the record to show it. In passing on the legal and factual sufficiency of the evidence, we are limited to what was presented at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A.1993). This record is devoid of evidence explaining how the ATM may have been induced to spit out dollars in reliance on implied representations by the appellant concerning the purpose and Air Force approval of the cash advance. I do not believe any reasonable trier of fact should have convicted the appellant of either larceny or wrongful appropriation. Therefore, I find the evidence is not legally sufficient to support the findings. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979). Even assuming legal sufficiency, the evidence still does not persuade me, beyond a reasonable doubt, that the appellant is guilty

---

**4.** In his concurring opinion, the Chief Judge focuses on evidence of the appellant's *intent* when he used the Diners Club card at the ATM. The Chief Judge's opinion fails to recognize that, before intent becomes an issue under Article 121, the appellant must have first *wrongfully obtained* the money. To reach that threshold conclusion, the lead opinion imputes to the appellant a representation that he is in compliance with the terms of his credit agreement whenever he used the card. This is where the majority and I part company, and not the issue of appellant's intent.

**5.** Query: Would the result in *Marrelli* have been the same if the accused in that case had "overdraft protection" for his checking account, allowing him to write checks for more than his balance in return for his promise to repay the debt?

of larceny. Article 66(c), UCMJ;[6] *United States v. Turner,* 25 M.J. 324, 325 (C.M.A. 1987).

## V. CONCLUSION

Readers should not construe my opinion as condoning the misuse of Air Force-issued travel cards. I understand the purpose behind the program. I accept that the military has an interest in deterring and punishing misuse of the cards. However, the armed forces have ample legal means to do so without misshaping the criminal law.[7] Although not charged here, I am confident the prosecution could have presented sufficient evidence to convict the appellant under either clause (2) or (3) of Article 92, UCMJ.[8] If there is no punitive general regulation currently on the books to support prosecution of travel card misuse under Article 92(1), it is certainly in the Air Force's power to publish one.

Even without an Article 92 charge, this appellant provided the government with a smorgasbord of options for punishing his conduct. When confronted with the apparent misuse of the card, the appellant lied to his first sergeant. He also threw away all the Diners Club bills. Yet he was never charged with false official statement (Article 107, UCMJ[9]) or obstructing justice (Article 134, UCMJ[10]). Appellant could have been charged with dishonorably failing to pay just debts (also a violation of Article 134) based on the more than $4,000.00 in ATM advances he failed to acknowledge and pay. Yet he was not charged with that offense for the ATM advances. Appellant was charged and convicted, consistent with his pleas, of two specifications of dishonorably failing to pay just debts resulting from other uses of the Diners Club card. However, the convening authority set aside these findings. Thus, the government chose to put all of its eggs in the Article 121 basket.

Unless we affirm this conviction, the appellant walks—surely an unattractive result in the face of such abundant dishonesty. Nonetheless, I invite attention to Justice Harlan's time-honored admonition to "take care, for the general good of the community, that hard cases do not make bad law." *United States v. Clark,* 96 U.S. 37, 49, 24 L.Ed. 696 (1878) (Harlan, J., dissenting) (quoting *East India Co. v. Paul,* 7 Moo. 85, 111, 13 Eng.Rep. 811, 821 (P.C.1849)). It is bad law to create a new form of larceny by false pretense where none existed before. It is bad law to affirm a conviction for larceny by false pretense where there has been no proof of inducement. For the general good of the military community, I dissent. I would set aside the approved findings and sentence, and dismiss Charge II and its specification.

---

**6.** 10 U.S.C. § 866(c) (1994).

**7.** The Chief Judge states my opinion "suggests that, because appellant was issued a credit card pursuant to the Diners Club Government Card program, he could use the card in any manner he chose." I suggest no such thing. I only disagree with the majority's view that the appellant's conduct violated *Article 121*.

