OPINION OF THE COURT
BECKER, Judge:
This case requires us to apply the law of larceny, as expressed in Article 121, UCMJ,[1] to the opportunities for self-help enrichment offered by computer technology. Under the circumstances here, we find Article 121 covers the appellant’s actions, and we affirm his larceny conviction.
A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of three specifications of using a fraudulent writing for obtaining payment of a claim, in violation of Article 132, UCMJ,[2] and one specification of larceny of military property of the United States, in violation of Article 121. His approved sentence is a bad-conduct discharge, confinement for 11 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. Appellant asserts the evidence is legally and factually insufficient to support his larceny conviction. He also contends the military judge made an instructional error. We find no prejudicial error and affirm.
*800 I. BACKGROUND
Appellant was an accounting and finance specialist. In 1990 and 1991, he served in a small Air Force accounting and finance office on Carl Shurz Kaserne, an Army installation in Germany. Three times during this period, the appellant used pre-signed pay vouchers, to which he had access because of his duties, to pay himself “casual pay” totaling $11,600. “Casual pay” is pay already earned by a military member, but which cannot be paid to the member in the ordinary way. In the usual case, the member is traveling between assignments, or is otherwise away from his normal station on payday, and obtains the casual payment from the nearest military finance office. Casual payments are posted against the member’s military pay, and his routine paychecks are reduced accordingly. At all times pertinent here, the appellant was not eligible to receive casual pay.
Procedures at Carl Shurz Kaserne required payment of Air Force pay vouchers through the local Army finance office. For reasons not explained in the record, casual payments made by the Army office took between three and ten months to be posted against a member’s military pay. In effect, the appellant’s “casual” payments, combined with the delay in posting them against his military pay, resulted in a pay advance obtained without the required command approval. These events form the basis for the appellant’s Article 132 convictions. He does not attack these convictions on appeal.
After leaving Germany, the appellant was reassigned to the accounting and finance office at McGuire Air Force Base, New Jersey. There, in late 1991 and early 1992, the appellant made data entries in his computerized finance records to pay himself more than $1,200 in Basic Allowance for Subsistence (BAS) for which he was not eligible. Because of these entries, the appellant’s monthly pay and allowances were higher. This produced a larger “pot” of money, against which the Air Force would offset the appellant’s outstanding debt from the “casual” payments. As a result, the appellant had more income left over after each offset. These computer entries are the basis for the appellant’s larceny conviction.
Appellant’s scheme finally caught up with him after his reassignment from McGuire to the accounting and finance office at Offutt Air Force Base, Nebraska. Because of the large amount of indebtedness from the “casual” payments, the appellant’s repayment schedule extended beyond his date of separation. This anomaly attracted attention at Offutt, and eventually resulted in an audit of the appellant’s pay history. Following the audit, the appellant made oral and written confessions to agents of the Air Force Office of Special Investigations.
II. LARCENY IN CYBERSPACE
Appellant argues the evidence shows he did nothing more than a computer “accounting trick” which resulted in an “illusory” BAS payment. We are not persuaded by this “spin-doctoring” of the facts. The evidence proves the appellant stole military funds belonging to the United States, however unsuccessful his efforts were in the end.
Any person who, with the requisite intent, “wrongfully takes, obtains, or withholds, by any means ” property or money belonging to another commits larceny. Article 121, UCMJ (emphasis added). In adopting Article 121, Congress intended to merge the common law offenses of larceny by trespass (i.e., wrongful taking), embezzlement (wrongful withholding), and false pretense (wrongful obtaining). United States v. Antonelli, 35 M.J. 122, 124 (C.M.A.1992). Congress did not intend Article 121 to cover anything beyond the perimeter of these three “predicate offenses.” Id, at 126. However, Congress sought to knock down the analytical barriers between these variations of the now-same offense:
[T]he fine subtleties that had conceptually (if not always logically) distinguished [the common law offenses] are not material to guilt or innocence under Article 121 [footnote omitted].
Id. at 124. We recently discovered that traditional Fourth Amendment principles readily translate to searches of computer data banks. See United States v. Maxwell, 42 M.J. 568, 572 (A.F.Ct.Crim.App.1995). Like *801 wise, we now find that Article 121 is well equipped to deal with larceny in cyberspace.
In his instructions on the elements of larceny, the military judge told the members they had to find the appellant “wrongfully took or obtained” the funds. This alternative approach was proper. It matters little how we view the form of the appellant’s conduct, as long as it is “larceny” under Article 121. United States v. Christy, 18 M.J. 688, 690 (N.M.C.M.R.1984); see also United States v. Schaper, 42 M.J. 737, 741, 742 n. 3 (A.F.Ct.Crim.App.1995) (Dixon, C.J., concurring, and Becker, J., dissenting). The facts support the appellant’s larceny conviction under either theory.
Appellant’s data entries effected an electronic transfer of United States funds to his pay account. This was not an “accounting trick.” This was a wrongful “taking” within the meaning of Article 121. The fact this happened in cyberspace does not change its character. The movement of funds here was no more “illusory” than if the appellant’s bank had electronically removed the funds in his checking account and given them to someone else.
If not a wrongful “taking,” then the appellant wrongfully “obtained” the funds in violation of Article 121. We have no difficulty finding the appellant made an implicit representation that he was entitled to the BAS when he made the data entries, a false representation which induced the United States to transfer its funds to him. See MCM, Pt. IV ¶ 46c(1)(e); see also United States v. Dean, 33 M.J. 505, 510 (A.F.C.M.R.1991). Again, the fact these events took place in cyberspace does not change their character. Cf. Schaper (majority affirmed larceny conviction, imputing false representation by unauthorized use of Diner’s Club card which induced automatic teller machine to part with currency), 42 M.J. at 742-45 (Becker, J., dissenting) (majority erred in imputing false representation based only on breach of contract, and in finding evidence sufficient to prove any such representation “induced” the teller machine).
We find the evidence is legally sufficient to support the appellant’s larceny conviction. Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791-92, 61 L.Ed.2d 560 (1979). Moreover, the evidence convinces us, beyond a reasonable doubt, that the appellant is guilty of larceny. United States v. Turner, 25 M.J. 324, 325 (C.M.A.1987).
III. REMAINING ISSUE AND DECISION
While instructing on the elements of larceny of military property of the United States, the military judge told the members that “funds which belong[] to the United States [are] military property.” The defense did not object to this definition. Appellant now argues this was prejudicial error, points ing out that not all United States funds are “military” funds. In the abstract, the appellant is obviously correct. However, in the context of this case, the instruction was not plain error. Therefore, by not making a timely objection, the appellant waived any error. R.C.M. 920(f). Even if we do not apply waiver, we find the error was harmless. See Article 59(a), UCMJ.[3] Appellant’s theory of defense had nothing to do with the nature of the funds, and there is no question that the funds in question were “military property of the United States.”
The findings and sentence are correct in law and fact. Accordingly, they are
AFFIRMED.
Senior Judge PEARSON and Judge MORGAN concur.

. 10 U.S.C. § 921 (1988).

. 10 U.S.C. § 932 (1988).

. 10U.S.C. § 859(a) (1994).