UNITED STATES, Appellee,

v.

**Stacey E. MERVINE, Cryptologic Technician (Communications) Seaman, U.S. Navy, Appellant.**

No. 57,183.
NMCM 86 0373.

U.S. Court of Military Appeals.

Sept. 28, 1988.

For Appellant: *Lieutenant John L. Staley*, JAGC, USNR (argued); *Lieutenant Commander J.J. Quigley*, JAGC, USN (on brief).

For Appellee: *Lieutenant Kevin R. Smith*, JAGC, USNR (argued); *Captain Wendell A. Kjos*, JAGC, USN (on brief); *Lieutenant Yvonne M. Carroll*, JAGC, USNR.

*Opinion of the Court*

SULLIVAN, Judge:

Appellant was tried by a special court-martial, composed of a military judge alone, on September 4, 1985, at the United States Naval Communication Station, Diego Garcia, British Indian Ocean Territory. Pursuant to his pleas, he was found guilty of attempted larceny of money, dishonorable failure to pay a just debt, and seven specifications of unauthorized absence, in violation of Articles 80, 134, and 86, Uniform Code of Military Justice, 10 USC §§ 880, 934, and 886, respectively. Appellant was sentenced to a bad-conduct discharge, confinement and forfeiture of $413.00 pay per month for 2 months, and reduction to E-1. The convening authority approved the sentence. The Court of Military Review affirmed the findings and sentence. 23 M.J. 801 (1986).

This Court granted review of the following issue:

> WHETHER THE UNITED STATES NAVY–MARINE CORPS COURT OF MILITARY REVIEW WAS INCORRECT IN DECIDING THAT AN ATTEMPT TO FRAUDULENTLY EXTINGUISH A VALID DEBT CONSTITUTED AN ATTEMPTED LARCENY OF THE AMOUNT OF THAT DEBT.

We hold that the Court of Military Review erred when it impliedly held that a valid debt was a form of money and the proper subject of a larceny offense under Article 121, 10 U.S.C. § 921. *See United States v. Amie*, 7 U.S.C.M.A. 514, 518, 22 C.M.R. 304, 308 (1957).

The guilty-plea inquiry established that appellant purchased a television, a video cassette recorder, and video master movies from the Navy Exchange while he was stationed at the Naval Security Group Activity in Naples, Italy. The purchases were made under a deferred payment plan, in which appellant agreed to pay $900.00 in monthly installments.

On March 7, 1985, appellant was transferred to the Naval Communication Station, Diego Garcia. While in Diego Garcia, he

received notices from the Exchange concerning overdue payments. Appellant failed to make the required payments. He then devised a plan to deceive the Exchange into believing that he had already paid the entire amount of the debt, which by then was $952.42.

Appellant acquired a Postal Money Order receipt from a former supervisor and altered the receipt to include his own name, his account number, the appropriate date, and the amount he owed. In addition, appellant sent an explanatory letter from himself and a letter from his commanding officer stating that he had paid the debt and that the Exchange had misplaced or lost the record of his payment. The Exchange detected the forgeries and notified the Naval Investigative Service.

At trial, appellant pleaded guilty to the attempted larceny of $952.42 from the Navy Exchange. In view of appellant's pleas, the Government withdrew two forgery specifications related to the attempted larceny charge.

---

Before the Court of Military Review, appellant challenged the providence of his guilty pleas to the attempted larceny charge. He argued that his plan, if carried to fruition, would not have resulted in a wrongful taking of $952.42 from the Navy Exchange as charged or any other act cognizable under Article 121. The Court of Military Review decided against appellant and broadly held that an attempt to fraudulently extinguish a valid debt constituted an attempted larceny of the amount of the debt.

The particular issue of concern to us is whether a debt or the amount of a debt can be the subject of a larceny proscribed by Article 121. *See generally United States v. Windham,* 15 U.S.C.M.A. 523, 525, 36 C.M.R. 21, 23 (1965); *United States v. Herndon,* 15 U.S.C.M.A. 510, 513, 36 C.M.R. 8, 11 (1965). To determine whether a debtor's obligation falls within the realm of a *res* that can be stolen, we must consider the specific words of this statute and, if necessary, the legislative history explaining them. *Bresgal v. Brock,* 843 F.2d 1163,

1166 (9th Cir. 1987). *See United States v. O'Kelley,* 701 F.2d 758, 760 (8th Cir.) *cert. denied,* 464 U.S. 838, 104 S.Ct. 128, 78 L.Ed.2d 124 (1983).

Article 121 defines larceny as "wrongfully tak[ing], obtain[ing], or withhold[ing], by any means, from the possession of the owner or of any other person *any money, personal property, or article of value of any kind."* (Emphasis added.) This Article proscribes larceny in its various forms, including obtaining property by false pretenses and embezzlement, and provides for a simplified pleading form to cover the different theories of theft. Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Comm., 81st Cong., 1st Sess. 815, 1232 (1949). The combination of these offenses into a single statute, however, did not create any offense under the statute not previously recognized by common law as larceny, false pretenses, or embezzlement. *United States v. Buck,* 3 U.S.C.M.A. 341, 343, 12 C.M.R. 97, 99 (1953). Thus, Article 121 must be interpreted in light of the common-law meaning of those offenses.

■ At common law, larceny was defined as "the trespassory taking and carrying away of the personal property of another with intent to steal the same." R. Perkins and R. Boyce, *Criminal Law* 292 (3d ed. 1982). Moreover, the common law required that the object of the larceny be tangible and capable of being possessed. 50 Am Jur 2d, Larceny § 62. *See United States v. Abeyta,* 12 M.J. 507 (A.C.M.R. 1981). "[P]ossession cannot be taken of a debt or of the obligation to pay it, as tangible property might be taken possession of." *Harris v. Balk,* 198 U.S. 215, 25 S.Ct. 625, 627, 49 L.Ed. 1023 (1905), *overruled on other grounds, Shaffer v. Heitner,* 433 U.S. 186, 211–12 nn. 38–39, 97 S.Ct. 2569, 2583–2584 nn. 38–39, 53 L.Ed.2d 683 (1977); *Jolly v. United States,* 170 U.S. 402, 406–07, 18 S.Ct. 624, 626, 42 L.Ed. 1085 (1898). *See generally* W. Clark and W. Marshall, *A Treatise on the Law of Crimes* §§ 313 and 309 (5th ed. 1952). Accordingly, we hold that a debt or the amount thereof is not the

proper subject of a larceny under Article 121.

Appellant, however, was particularly charged with attempting to steal money, a tangible *res* specifically delineated in the statute. He was not charged with stealing the goods he originally purchased or, for that matter, stealing a debt. Apparently, the Government's prosecutorial theory was that since appellant "owned" the property, then the Exchange "owned" $952.42 of appellant's money. This theory is flawed in view of the non-possessory nature of the debtor-creditor relationship recognized for purposes of larceny under Article 121, as explained in the Manual for Courts-Martial. "The taking, obtaining, or withholding must be of specific property. *A debtor does not withhold specific property from the possession of a creditor by failing or refusing to pay a debt, for the relationship of debtor and creditor does not give the creditor a possessory right in any specific money or other property of the debtor.*" Para. 46 c(1)(b), Part IV, Manual for Courts-Martial, United States, 1984 (emphasis added). *See United States v. Amie, supra.*

The Court of Military Review, adopting a somewhat different tack, characterized appellant's debt as an account receivable which it further defined as a form of money. An account receivable is an accounting or business term defining a debt. *Black's Law Dictionary* 17 (5th ed. 1979). *See Matter of Young,* 806 F.2d 1303, 1306–07 (5th Cir.1987). It possesses no more tangibility than the chose in action it represents.

*See Jolly v. United States, supra.* While it states the amount of a debt in monetary terms, it is simply not the equivalent of money for purposes of Article 121. In light of what we said earlier, we conclude that the holding of the court below to the contrary had the effect of broadening [1] the scope of larceny beyond that intended by Congress.[2] *See generally United States v. Margelony,* 14 U.S.C.M.A. 55, 57–58, 33 C.M.R. 267, 269–70 (1963); *United States v. Cornell,* 15 M.J. 932 (N.M.C.M.R.1983). In any event a fatal variance of proof occurred in the present case, and the findings of guilty must be set aside. *See United States v. Wray,* 17 M.J. 375 (C.M.A.1984).

The decision of the United States Navy-Marine Corps Court of Military Review is reversed as to Charge I and its specification and the sentence. The findings of guilty thereon are set aside and that Charge is dismissed. The record of trial is returned to the Judge Advocate General of the Navy who may submit the record to that court for reassessment of the sentence based on the remaining findings of guilty or forward the record to a convening authority for a rehearing on Charge II and its specifications and the sentence. If the convening authority deems a rehearing impracticable, he may reassess the sentence.

Judge COX concurs.

EVERETT, Chief Judge (concurring):

Pursuant to his guilty pleas, appellant was convicted of attempted larceny. Therefore, the question now is whether he

---

**1.** Certain jurisdictions have expanded by statute the type of objects which may be the subject of larceny. *See, e.g.,* 50 Am Jur 2d, Larceny § 63. Article 121, however, is based on strict construction of the common-law meaning of larceny. The two state cases upon which the Government relies are based on state statutes which have broadened the common law meaning of larceny. *See State v. Monk,* 42 Wash.App. 320, 711 P.2d 365, 366 n.1 (1985). In pertinent part, RCW 9A.56.020(1) states: " 'Theft' means: ... (b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services." *See also Brown v. State,* 414 So.2d 15–16 (Fla.App.1982), where the

statute in question "defines 'property' as 'anything of value,' including 'intangible personal property, including rights, privileges, interests, and claims.' " § 812.012(3), Florida Statutes (1979).

**2.** We note that since 1962, the President, for purposes of Article 123a, Uniform Code of Military Justice, 10 USC § 923a, has described "[a]rticle or thing of value" to include "rights which are intangible..." Exec. Order 11009, 27 Fed.Reg. 2585 (1962), para. 202a, Manual for Courts-Martial, United States (1951) (Addendum). *See United States v. Margelony,* 14 U.S.C.M.A. 55, 57–58, 33 C.M.R. 267, 269–70 (1963).

would have been guilty of larceny if his attempt had been consummated.

Mervine sought to extinguish by fraud a debt of $952.42 which he owed to the Navy Exchange; and the Government insists that a debtor's fraudulent extinction of a debt owed to a creditor constitutes larceny under Article 121, Uniform Code of Military Justice, 10 USC § 921. Certainly, in some respects, he would have been ahead to the extent of $952.42, if his scheme had succeeded. His financial statement would no longer have reflected any liability to the Exchange—although, of course, his underlying liability still would have existed. Because of the economic benefit appellant anticipated, I have sympathy for the Government's view that he would be guilty of larceny.

However, Article 121 is not worded in terms of economic benefit. For example, if a servicemember has fraudulently obtained personal services worth $100.00, he has received a benefit in that amount; but he is not guilty of larceny, because he has not obtained, in the language of Article 121, "any money, personal property, or article of value of any kind".[1]

Mervine was seeking to procure cancellation of a debt which had resulted from his purchase of goods from the Navy Exchange on credit. If he had induced the purchase by misrepresentations to Exchange officials, he would be guilty of having stolen the items bought on credit, since Article 121 includes obtaining property by false pretenses. However, the Government does not claim that this occurred. Instead, its theory is that use of fraud at a later time to obtain release of an existing indebtedness constitutes larceny in the amount of the debt.

Appellant's argument is supported by a distinction that the common law sometimes has made between the contemporaneous advance of "new" value and cancellation of a prior debt. It was once widely held at common law that cancellation of an existing debt in return for a conveyance of land would not provide the requisite "value" to become a bona fide purchaser, and this rule apparently continues to exist in some jurisdictions today. *See M. & J. Finance Corp. v. Hodges*, 230 N.C. 580, 55 S.E.2d 201 (1949); 77 Am Jur 2d, Vendor and Purchaser § 701. In addition, prior to adoption of the Negotiable Instruments Law, a substantial number of courts had held that a creditor who canceled a pre-existing debt in exchange for a negotiable instrument could not become a holder in due course. F. Beutel, *Beutel's Brannan Negotiable Instruments Law* § 25 at 515 (7th ed. 1948).

Perhaps this common-law distinction reflects the circumstance that an already-incurred indebtedness may not be fully collectible and, therefore, may be subject to a substantial discount in computing its value. Perhaps the distinction was based on the circumstance that no *res* was transferred. Whatever its rationale, I conclude that this distinction was recognized at common law in defining the boundaries of larceny and that Congress intended to incorporate it into Article 121 of the Uniform Code.

I do not interpret the majority opinion to mean that an account receivable can *never* be the subject of larceny. Certainly, if a document evidencing the account is taken, there would be grounds for prosecution for larceny of the document (*e.g.*, if the accused in this case had removed the record of the account from the Exchange's files). *See* 50 Am Jur 2d, Larceny § 62. Also, where the theft of an account receivable is intended to result in the actual receipt of funds by the accused—as where the accused substitutes his name as creditor on a receivable due to another—grounds for a larceny prosecution may exist.[2] This case, however, is even further removed from the

---

1. However, he would be guilty of obtaining services under false pretenses in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934; *see* para. 78, Part IV, Manual for Courts-Martial, United States, 1984, and he would be subject to the same punishment as if his act had been larceny. *Compare* para. 78 e(1) and (2) *with* para. 46 e(1)(a) and (b), Manual, *supra*.

2. It is interesting to note that under Article 9 of the Uniform Commercial Code, "accounts" are not included in the category of "general intangi-

traditional larceny case: Even if his scheme had succeeded, at no time would the accused have come into physical possession of property other than that which he already had, unlike a person who fraudulently transfers funds from someone else's account to his own.

There is no doubt that the economic consequences of the accused's actions may be considered the same as those resulting from a simple larceny of funds. Indeed, this may be another instance where changes in the way business is transacted have outpaced traditional common-law categories.[3] Nonetheless, the strict construction we are required to give to penal statutes requires that any necessary expansion of "larceny" come from Congress.[4]

bles," and they are not considered "goods." Rather, they occupy a unique status. *See* U.C.C. § 9–106.

**3.** In many ways, technological advances—such as those involved in the use of computers and electronic transfers of funds—are hard to reconcile with common-law categories.

**4.** Military prosecutors may also be able to deal with some new types of theft and commercial fraud by use of the third clause of Article 134 to incorporate relevant provisions of title 18, which has in recent years been amended from time to time to deal with new conditions. *See, e.g.,* 18 U.S.C. § 1030 (computer fraud and abuse); 18 U.S.C. § 1029 (credit card fraud); *see also* 18 U.S.C. §§ 13 and 1001.