**UNITED STATES, Appellee,**

v.

**Specialist Terry G. RHYNS, 435–27–1066, United States Army, Appellant.**

**ACMR 9000272.**

U.S. Army Court of Military Review.

29 Nov. 1990.

---

For Appellant: Colonel Robert B. Kirby, JAGC, Captain W. Renn Gade, JAGC, Captain Holly K. Desmarais, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Martin D. Carpenter, JAGC, Captain Denise J. Arn, JAGC, Captain Marcus A. Brinks, JAGC (on brief).

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

### OPINION OF THE COURT

GRAVELLE, Judge:

The appellant was tried by a military judge sitting as a special court-martial at Camp Casey, Korea. Contrary to his pleas, he was convicted of larceny of government property in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, con-

finement for four months, and reduction to the grade of Private E1.

We requested briefs on whether there was sufficient evidence to support a conviction for larceny—or attempted larceny—in light of *United States v. Mervine*, 26 M.J. 482 (C.M.A.1988). We find the evidence insufficient as a matter of fact and law to support the conviction.

I

The facts, largely taken from the appellant's statement to a Criminal Investigation Command (CID) investigator, are not in dispute. On 1 July 1989, the appellant was approached by another soldier during a barbecue in the barracks area of his artillery unit at Camp Casey, Korea. The soldier, Specialist (SPC) Birks, was a stranger to the appellant. SPC Birks asked the appellant "Are you cool, and shit?" Birks then asked the appellant if he wanted an advance pay (*i.e.*, an advance payment of his monthly military pay).[1] Because the appellant needed money for a scheduled leave and for family reasons, he replied in the affirmative. SPC Birks told appellant that he knew someone in the replacement detachment finance section who would help the appellant get an advance payment. The appellant thereafter went to his personnel administration center (PAC) and was assured by a sergeant there that he was eligible to get an advance payment because he had not yet been in Korea for 180 days.[2] The sergeant gave him a Department of Army (DA) Form 2142, also called a "pay inquiry" (*i.e.*, the application form for the advance pay), and the appellant's battery commander signed the document.[3] Pursuant to telephone instructions from SPC Birks, the appellant took the pay inquiry at a designated time to the finance section located at the Camp Casey replacement detachment. This finance section was a branch office and was different from the main finance office at Camp Casey where the appellant had previously obtained an advance pay.

Prior to entering the replacement detachment finance office, the appellant met SPC Birks outside the finance office, and SPC Birks told the appellant that his advance pay was ready to be picked up. Using the pay inquiry document approved by his commander, the appellant received $980.00 in advance pay. The appellant testified that immediately after he left the replacement detachment finance office, SPC Birks approached him and told him that he "had to pay another guy half the money and that my advance pay would not come out of my check." The appellant, without apparent hesitation or question, paid SPC Birks $490.00. For reasons not entirely clear from the record the scheme failed and the government, acting pursuant to established finance procedures, began deducting the advance pay from appellant's next paycheck.

The CID investigator questioned the appellant about his payment to SPC Birks and specifically asked if appellant thought that he would have to pay the government back the $980.00 advance payment. In a sworn written statement, appellant stated:

When he [Birks] told my [sic] that to pay [sic] the $490.00 so the advance payment would not show up on my LES I did not think that I would have to pay back the money. *But before he told me that, I thought that the advance payment would be taken out of my pay.* When I was paid the money at the cage, the man

---

1. Procedures regarding payment of advance pay are contained in Department of Defense, Military Pay and Allowances–Entitlements Manual (DODPM), Part 4, para. 40101–40112 (7 March 1987) and in Department of Army Regulation 37–104–3, Financial Administration: Military Pay and Allowance Procedures, Joint Uniform Military Pay Systems (JUMPS–Army), (3 March 1988). *See also United States v. Johnson*, 30 M.J. 930, 935 nn. 3 & 4 (A.C.M.R.1990). Neither the DODPM nor the Army Regulation were introduced at trial.

2. There is no evidence that the appellant misrepresented his status in discussing his eligibility for advance pay. The PAC sergeant did not testify at trial.

3. The pay inquiry (DA Form 2142) was not introduced into evidence, nor is it contained in the allied papers. We can only speculate whether it contained any misrepresentations made by the appellant.

inside took my pay inquiry and I asked to have a copy. He told me that I did not need one. (Emphasis added).

Appellant's in-court testimony was consistent with his statement to the CID investigator.

At trial, the Government presented the Camp Casey finance detachment's first sergeant as an expert in Army finance matters. The witness testified that advance pay is intended to defray the cost of permanent change of station (PCS) moves. It is normally payable within thirty days prior to a PCS move, or up to sixty days after completion of such a move. With the approval of a battalion commander, advance pay is authorized up to ninety days prior to and six months after a PCS move.[4] The witness, after reviewing the appellant's finance records, testified that the appellant had received an advance pay from the replacement detachment finance office at Camp Casey on 1 July 1989, and that the advance pay was correctly posted to the appellant's pay account. According to these finance records, and consistent with normal finance procedure, repayment was prorated over a twelve-month period. The finance records also showed that the appellant had received two other advance pays, one of them from the main finance office at Camp Casey. The witness described the local finance procedures then in effect at Camp Casey. Under these procedures, advance pay could be obtained at both the main and branch finance offices. The witness testified, however, that normally the appellant should have gone to the main finance office for payment.

The Government relied almost entirely upon the appellant's confession to establish the factual basis of the larceny.

## II

■ To constitute the offense of larceny under Article 121, Uniform Code of Military Justice, there must be, *inter alia*, a wrongful taking, obtaining or withholding of property with intent permanently to deprive or defraud the owner or another person of the use and benefit of that property or to appropriate the property for the use of the accused or of any person other than the owner. Manual for Courts–Martial, 1984, Part IV, para. 46b(1). If a person comes into possession of property by a taking or obtaining which was not wrongful or which was without a concurrent intent to steal, a larceny is nevertheless committed if an intent to steal is formed after the taking or obtaining and the property is wrongfully withheld with that intent. *Id.* at para. 46c(1)(f)(i). An intent to steal may be proved by circumstantial evidence. Further "[a]n intent to steal may be inferred from a wrongful and intentional dealing with the property of another in a manner likely to cause that person to suffer a permanent loss thereof." *Id.* at para. 46c(1)(f)(ii).

■ An obtaining of property from the possession of another is wrongful if the obtaining is by false pretense. However, such an act is not wrongful if it is authorized by law or apparently lawful superior orders. *Id.* at para. 46c(1)(d).

■ A debt or the amount thereof cannot be the subject of larceny under Article 121, UCMJ. *United States v. Mervine*, 26 M.J. 482 (C.M.A.1988).

In *United States v. Turner*, 25 M.J. 324 (C.M.A.1987), the Court established for the Military Courts of Review the following tests for reviewing the legal and factual sufficiency of the evidence:

The test for the former is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d

---

4. The government introduced the appellant's personnel records at trial to show the appellant's most recent PCS date, since eligibility for advance pay is based on this date. The records indicate his last PCS as December 1988; however, the same records show his arrival in Korea from Fort Sill, Oklahoma, on 3 March 1989. If the latter date is used, the appellant would have been eligible for advance pay with his battalion commander's authorization, at least according to the finance expert's testimony. The appellant received authorization from his battery commander in this case. These same personnel records show his date of eligibility to return from overseas service (DEROS) as 4 May 1990, when his enlistment was due to expire.

560 (1979). For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of Military Review are themselves convinced of the accused's guilt beyond a reasonable doubt.

*Id.* at 325. *Accord United States v. Rivera–Cintrone,* 29 M.J. 757 (A.C.M.R.1989), *pet. denied,* 31 M.J. 403 (C.M.A.1990); *United States v. Johnson,* 30 M.J. 930 (A.C.M.R.1990).

### III

■ The Government asks us to infer from the appellant's statement to the CID investigator and from other evidence introduced at trial, that the appellant formed an intent to commit larceny during his conversations with SPC Birks at the barbecue, or at some other time prior to receipt of the advance pay. The Government also asks us to infer larcenous intent and an obtaining by false pretenses from appellant's processing of the advance pay contrary to local finance procedures.

For the appellant to be guilty of larceny on the theory that he obtained the advance pay by false pretense, the obtaining must have been in violation of law or done without authority. Further, for purposes of forming the requisite *mens rea,* the timing of the appellant's knowledge of and entry into the scheme is critical in this case. If the appellant gained knowledge and formed a guilty intent only after he had lawfully procured the advance pay, then a larceny by wrongful taking or obtaining could not have occurred.

We find no evidence that the processing of the advance pay was procured by false pretense. The uncontradicted evidence of record indicates that the appellant was assured by a noncommissioned officer in the PAC that he was eligible to obtain an advance pay, that the appellant obtained the appropriate forms, and that the request for advance pay was approved by the appellant's battery commander. The appellant used these forms to obtain advance pay from a finance office authorized to give advance pay, albeit not the normal office that should have been utilized under local finance procedures. Further, there is insufficient evidence to show that appellant, an artillery crew member, knew of these local procedures. Even assuming a self-serving bias in appellant's confession, it contains insufficient facts to permit us to find either the requisite *mens rea* or an obtaining by false pretense. *See United States v. Johnson,* 30 M.J. 930 (A.C.M.R. 1990).

■ Once appellant had received the money and thereafter became aware of the scheme and paid a portion of the advance pay to SPC Birks, was appellant then guilty of larceny by withholding—or, more properly of attempted larceny (since the scheme to alter the finance records failed)? We believe not. Once the appellant had presented the proper documents to the finance clerk and received the advance pay, a debt to the United States in the amount of the advance pay was created. Finance procedures would have extinguished the debt through twelve regular monthly deductions from the appellant's pay. From the paucity of facts presented by the government at trial, we can infer no more than that the appellant had, in effect, an interest-free loan, the terms of which required repayment in twelve equal monthly payments. There is no evidence of record that he owed a duty under the finance regulations to immediately return the money once he became aware of the scheme. Therefore, we are unable to conclude that he wrongfully withheld the money.

Appellant's attempt to extinguish his debt amounted to an attempted theft of a debt. His actions may be unlawful and may be a violation of some other article of the Uniform Code of Military Justice, but they do not amount to a larceny or an attempted larceny. *See Mervine,* 26 M.J. at 486 (Everett, C.J. concurring).

The findings of guilty and the sentence are set aside and the charge is dismissed.

Senior Judge JOHNSON and Judge WERNER, concur.