UNITED STATES

v.

**Reginald E.K. HOLLEY, 579–94–0452, Yeoman Third Class (E–4), U.S. Navy.**

**NMCM 94 00158.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 22 Oct. 1993.

Decided 21 April 1995.

LT B.C. Lansing, JAGC, USNR, Appellate Defense Counsel, LT Leslie K. Burnett, JAGC, USNR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel, LT Brian B. Rippel,

JAGC, USNR, Appellate Government Counsel.

Before ORR, REED and WELCH, Senior Judges.

WELCH, Senior Judge:

The appellant was tried by a general court-martial composed of a military judge alone. In accordance with his pleas he was convicted of theft of two telephone calling card numbers, stealing two video game cartridges, and of ten specifications of obtaining telephone services under false pretenses, in violation, respectively, of Articles 121 and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 921, 934. He was sentenced to a bad-conduct discharge, confinement for 5 months, forfeiture of $200 pay per month for 5 months, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged.

The principal issue in this case concerns the providence of the appellant's plea of guilty to larceny in violation of Article 121, UCMJ, based upon his alleged theft of "telephone calling card numbers." Although he was initially charged with larceny of the telephone calling cards themselves, the appellant's responses during the providence inqui-

ry established that he had never taken physical possession of the cards. Based upon the facts admitted by the appellant, the military judge found him guilty of stealing only the numeric codes imprinted on the calling cards and not the cards. Accordingly, we specified the following issue:

DOES THE COPYING OF THE CARD NUMBERS, VICE AN ACTUAL TAKING OF THE CALLING CARD, CONSTITUTE A LARCENY UNDER ARTICLE 121, UCMJ?

Before accepting the appellant's pleas of guilty in this case, the military judge questioned the appellant to determine whether or not there was a factual basis for his guilty pleas as required by *United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969), and Rule for Courts–Martial [R.C.M.] 910(e). The appellant's admissions during the providence inquiry established that in April, 1993, one of the appellant's shipmates had left two telephone calling cards out in plain view on his rack in the berthing spaces he shared with the appellant. The appellant copied the numbers down on a piece of paper which he kept for later use, but he did not, either temporarily or permanently, appropriate the two telephone calling cards themselves.[1] The appellant admitted that when

---

1. The facts elicited from the appellant by the military judge conclusively established that the appellant never took physical possession of the telephone calling cards which were the alleged object of the larceny as charged. The pertinent portion of the record is set out below. In this colloquy, the military judge refers to only one card because the theft was initially charged as two separate larcenies and not consolidated by the judge until after the providence inquiry.

MJ: Let's talk about the larceny offenses. Your counsel a moment ago stood up and said that the larceny that you allegedly committed in Specifications 1 and 2 was not of the credit card itself, but rather of the credit card number, and given the fact that the larceny involved only the number, and I can only assume that we are talking about an obtaining of someone else's property with the intent to appropriate the property to his use or someone else's use, someone other than the owner, Seaman Jackson; is that right?

TC [sic]: Yes, sir.

. . . . .

MJ: *Tell me how you took that AT & T calling card number from the possession of Yeoman Seaman Larry Jackson, United States Navy.*

ACCUSED: Sir, the card was lying around and I had written the number down, and that was it.

MJ: In other words you saw his credit card lying around somewhere in the berthing spaces, this AT & T card?

ACCUSED: Yes, sir.

MJ: And you just wrote the credit card number down and put it in your pocket; is that true?

ACCUSED: Yes, sir. And the Sprint card as well, sir.

. . . . .

MJ: You left the card there so that the card was still in his possession?

ACCUSED: Yes, sir.

. . . . .

MJ: Where were these cards lying around when you saw them?

ACCUSED: On his rack at the time, sir.
Record at 26–31.

he copied down the numbers he had the intent to later use them to fraudulently obtain telephone services from the phone companies that had issued the cards and that he in fact did so.[2]

Article 121, UCMJ, defines larceny as "wrongfully tak[ing], obtain[ing], or withhold[ing], by any means, from the possession of the owner or of any other person any money, personal property, or article of value of any kind." The U.S. Court of Military Appeals has held that "Article 121 must be interpreted in light of the *common-law meaning* of [the] offenses [of larceny, false pretenses or embezzlement]." *United States v. Mervine*, 26 M.J. 482, 483 (C.M.A.1988) (emphasis added). According to the Court, "[a]t common law, larceny was defined as 'the trespassory taking and carrying away of the personal property of another with intent to steal.' Moreover, the common law required that the object of the larceny be *tangible and capable of being possessed.*" *Id.* (emphasis added) (quoting ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 292 (3d ed. 1982)).

Based upon this holding, it is clear that before a person subject to the UCMJ can be found guilty of larceny in violation of Article 121, it must be shown that he or she engaged in a wrongful taking, obtaining or withholding of *tangible property* from the *possession* of the owner. *Id.; see also United States v. Neff*, 34 M.J. 1195 (A.F.C.M.R. 1992), *United States v. Meeks*, 32 M.J. 1033 (A.F.C.M.R.1991), *United States v. Harrison*, 32 M.J. 1027 (A.F.C.M.R.1991), *United*

States v. Watkins, 32 M.J. 527 (A.C.M.R. 1990).

The appellant's mere act of copying the numeric codes from telephone calling cards which, at all times, remained in the possession of the person to whom they had been issued did not amount to a taking, obtaining or withholding of *tangible property* from the *possession* of another within the meaning of Article 121, UCMJ. This is true notwithstanding the fact that when the appellant copied down the numeric codes he did so with the intent to later use them in a scheme to fraudulently obtain long distance telephone services from the calling card issuers.[3] Rather than larceny under Article 121, the actions of the appellant in this case constitute mere preparation[4] to commit the separate crime of obtaining services by false pretenses in violation of Article 134, UCMJ.

As the Government noted in its Reply to the Specified Issue, when the UCMJ was enacted "[o]bviously ... Congress did not contemplate the broad use of consumer credit cards or computerized financial transactions by individual servicemembers." Government Reply at 7. To this observation we would add that despite the extraordinary advances in technology which have occurred since enactment of the UCMJ, Congress has not expanded the scope of Article 121 to encompass theft of intangible personal property. In contrast, Congress has passed other criminal legislation that applies to "any ... *account number[ ] or other means of account access* that can be used ... to obtain money, goods, services, or any other thing of value...." 18 U.S.C. § 1029(e)(1) (1988) (emphasis added).[5] Furthermore, as noted

---

**2.** The latter admission was made during the course of the providence inquiry into the appellant's guilty pleas to ten specifications of wrongfully obtaining services by false pretenses, of which the appellant was also found guilty.

**3.** *Cf. United States v. Cornell*, 15 M.J. 932 (N.M.C.M.R.1983) (holding that theft of telephone services cannot be the proper subject of larceny); *United States v. Flowerday*, 28 M.J. 705, 707 (A.F.C.M.R.1989) (holding that although it is a "close cousin" theft of telephone services is not larceny).

**4.** The distinction between preparation for and the commission of an offense normally arises in the context of an attempt. *Cf. United States v.*

*English*, 37 M.J. 1107, 1108 (N.M.C.M.R.1993) (holding that the act of attempting to obtain another person's "pin number" with the intent to later use it to obtain money from an automatic teller machine was "a very good example of 'devising or arranging the means or measures necessary for the commission of the offense,' which defines mere preparation").

**5.** We have considered the application of *United States v. Felty*, 12 M.J. 438 (C.M.A.1982), to the possible incorporation of this title 18 offense under the third clause of Article 134, UCMJ, 10 U.S.C. § 934, and rejected that application. We find there are more than "technical variances" between 18 U.S.C. § 1029 and Article 121, they are not "closely-related," and the maximum pun-

by the Court of Military Appeals in *Mervine,* several states have enacted legislation modernizing their criminal codes to make it a crime to steal intangible personal property.[6] "Article 121, however, is based on strict construction of the common-law meaning of larceny." 26 M.J. at 484, n. 1.

Regardless of the criminal intent with which the appellant apparently acted at the time he copied the numeric codes from Seaman Jackson's "AT & T" and "Sprint" calling cards, the appellant's mere recording of the numbers without taking physical possession of the cards did not constitute larceny or wrongful appropriation within the meaning of Article 121, UCMJ. While the military judge recognized that the appellant could not providently plead guilty to stealing the cards, themselves, the judge erred in accepting a guilty plea to the theft of a random sequence of numbers that was essentially intangible property and, therefore, not within the ambit of Article 121.[7] Consequently, we answer our specified issue in the negative.

Having disposed of the central issue in this case, we now address the assignment of error.[8] The appellant contends that a corrected action is required because the convening authority failed to reference the administrative credit for illegal pretrial confinement ordered by the military judge. The appellant spent 17 days in pretrial confinement. In accordance with *United States v. Allen,* 17 M.J. 126 (C.M.A.1984), and R.C.M. 305(k), the military judge ordered that the appellant receive day-for-day credit for the time served in pretrial confinement plus 1 additional day of administrative credit because he was not afforded a magistrate's hearing within 48 hours of his confinement as required by R.C.M. 305(i). The convening authority's action correctly recited that the appellant was entitled to 18 days' administrative credit as a result of his pretrial confinement. The Government has supplemented the record with documentation from the Naval Consolidated Brig, Charleston, South Carolina, reflecting that the appellant actually received 18 days' credit against his approved sentence to confinement.

■ The substance of the error of which the appellant complains is that the convening authority was mistaken in attributing all 18 days of administrative credit to "lawful pretrial confinement" served by the appellant, when, technically, only 17 days were due to time served and the additional day was granted as a remedy for the failure to afford the appellant a timely magistrate's hearing. The appellant does not claim nor do we find any prejudice resulting from the convening authority's technical error in mischaracterizing the nature of the administrative credit allowed as a result of the appellant's pretrial confinement. The appellant nevertheless

ishment authorized for a violation of that section of title 18 includes confinement for 10 years while the maximum confinement for the larceny offense charged here is only 6 months. *United States v. Epps,* 25 M.J. 319 (C.M.A.1987).

**6.** The Court observed that "[c]ertain jurisdictions have expanded by statute the type of objects which may be the subject of larceny," citing recently enacted statutory amendments in Washington and Florida. *Mervine,* 26 M.J. at 484 n. 1. Both of these jurisdictions have legislatively expanded the common-law meaning of larceny to include intangible personal property. For example, Florida's "theft statute" defines "property" as "anything of value," including "intangible personal property, including rights, privileges, interests and claims." Fla.Stat. ch. 812.012(3) (1979).

**7.** While this appears to be a case of first impression in the military, other jurisdictions have considered and ruled on the precise issue which we specified. In *People v. Tansey,* 156 Misc.2d 233, 593 N.Y.S.2d 426 (1992), the Supreme Court of New York, New York County, held that the mere knowing *"possession"* of a stolen telephone calling card *number* without possession of the actual telephone calling card cannot constitute the crime of criminal possession of stolen property because the card number itself is not *"tangible property"* that can be *"possessed."* The court observed that "[w]hile the People may believe that such activity should be dealt with more severely, *that is quintessentially a legislative, and not a judicial, determination."* 156 Misc.2d at 240–41, 593 N.Y.S.2d at 431 (emphasis added).

Similarly, we emphasize that it requires a legislative change by Congress, rather than a decision of this court, to expand the scope of Article 121 in order to "criminalize" the type of conduct engaged in by appellant in this case.

**8.** THE CONVENING AUTHORITY FAILED TO REFERENCE IN HIS ACTION ON THE CASE THE CREDIT FOR ILLEGAL PRETRIAL CONFINEMENT ORDERED BY THE MILITARY JUDGE. (Citations omitted.)

maintains that a corrected action is mandated by *United States v. Stanford*, 37 M.J. 388 (C.M.A.1993). We disagree.

In *Stanford*, the convening authority's action made no mention of the accused's entitlement to administrative credit for pretrial confinement. In ordering the issuance of a corrected action to specifically state the amount of credit for pretrial confinement to which the accused was entitled in that case, the Court stated that failure to do so could "encourage deliberate or negligent disregard of presidential rule-making or create unnecessary doubt concerning this administrative credit." *Id.* at 391 (citation omitted). Neither of the concerns expressed in *Stanford* is present here. Therefore, we find the assignment of error to be without merit.[9]

In accordance with our ruling on the specified issue, the finding of guilty of Specification 1 of Charge I (merged from Specifications 1 and 2 in accordance with the military judge's ruling consolidating the two alleged offenses) is hereby set aside and the resulting consolidated specification is dismissed. The remaining findings of guilty are affirmed. Applying the principles of *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990), and *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), most recently articulated in *United States v. Jones*, 39 M.J. 315 (C.M.A. 1994), we have reassessed the sentence and, finding it appropriate in light of the remaining charges of which the appellant stands convicted, we affirm the sentence as approved on review below.

Senior Judge ORR and Senior Judge REED concur.

---

9. Although not assigned as error by the appellant, we note that the court-martial order erroneously reflected that appellant was convicted of Specification 2 of Charge I. In fact, Specification 2 of Charge I was dismissed with prejudice by the military judge and the misconduct charged in the dismissed specification (theft of a "Sprint" calling card number) was consolidated with the unlawful act charged in Specification 1 of Charge I (theft of an "AT & T" calling card number). We would ordinarily order the issuance of a new promulgating order to correct this error. However, in light of our disposition of the specified issue, the need to correct this error is now moot.