UNITED STATES, Appellee,

v.

Specialist Cory A. SUNDEEN, 501–70–9503, United States Army, Appellant.

ARMY 9500280.

U.S. Army Court of Criminal Appeals.

18 Dec. 1996.

For Appellant: Captain Richard E. Burns, JA (argued); Lieutenant Colonel Michael L. Walters, JA (on brief).

For Appellee: Captain Joanne P. Tetreault, JA (argued); Colonel John M. Smith,

JA; Lieutenant Colonel Eva M. Novak, JA; Major Anthony P. Nicastro, JA (on brief).

Before GRAVELLE, JOHNSTON, and ECKER, Appellate Military Judges.

## OPINION OF THE COURT ON RECONSIDERATION

ECKER, Judge:

Pursuant to his pleas, appellant was convicted by a military judge sitting as a general court-martial at Fort Hood, Texas, of being absent without authority for more than thirty days (terminated by apprehension) and wrongful appropriation of government property (excess pay) in violation of Articles 86 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 921 (1988)[hereinafter UCMJ]. The approved sentence included a bad-conduct discharge, confinement for seven months, forfeiture of all pay and allowances, and reduction to Private E1.

In our memorandum opinion, dated 24 June 1996, we agreed with appellate defense counsel that appellant's plea of guilty to the wrongful appropriation was improvident. On 16 July 1996, the government requested reconsideration and suggested en banc review. The suggestion for en banc reconsideration was not adopted. However, we granted reconsideration and now, with modifications, affirm our earlier decision.

This is yet another case involving an overpayment of military compensation resulting in a criminal conviction. Appellate defense counsel assert that appellant's plea to wrongful appropriation is improvident.[1] We agree.

### FACTS

Appellant reentered active duty on 19 May 1993, designating that his pay be sent to his bank in California. The amount sent to this account was less than it should have been, but the nature of the shortfall could not be determined.

Appellant made a number of attempts to correct the pay error, making a series of visits to several different finance offices between May and late November 1993.[2] Despite repeated efforts by finance clerks to identify and fix the problem, the underpayments continued. To assist with his living expenses, appellant was tendered and accepted, two unsolicited casual pays, the last occurring around September 1993. However, he was never given any accounting showing how the monies received related to the actual, total entitlements due him since 19 May 1993.

In October, at Fort Hood, the appellant acceded to a finance clerk's urging and set up a local bank account so that pay could be sent there rather than to his bank in California. At the end of the month he received his first Leave and Earnings Statement since opening the local account. The statement reflected a continuing underpayment of basic pay and no payment of allowances. According to appellant, the clerk claimed opening a local bank account was the only option left to induce the "system" to respond and correct his pay problem. Unfortunately, this only made the situation worse.

By November, he learned that he was receiving deposits of basic pay into two separate bank accounts, but it was not until the end of December that the deposit to the local account was the correct amount of his basic pay and full allowances. Between November 1993 and January 1994 he made additional, if perfunctory, attempts to stop the double payments, and then gave up.

After January 1994, appellant began making withdrawals from the California account. He admitted suspecting that he was being overpaid at this point, but did not know by how much or in what categories of compensation. Similarly, because of the absence of a complete accounting or reconciliation, appellant did not know if he still had a net short-

---

1. This assignment of error questioned:
WHETHER THE APPELLANT'S PLEA OF GUILTY TO CHARGE II (WRONGFUL APPROPRIATION) WAS IMPROVIDENT WHEN THE FACTS ELICITED DURING THE PROVIDENCE INQUIRY FAILED TO ESTABLISH THAT APPELLANT HAD A LEGAL DUTY TO ACCOUNT FOR AN OVERPAYMENT OF BASIC PAY.

2. Appellant was forced to deal with different finance offices because of moves he made pursuant to permanent change of station orders.

**510**

age or if he was now in an overpaid status. At no time was he required to account for, or asked to repay, any alleged overage. When the payments to the California account finally stopped in May 1994, appellant had been overpaid $10,207.00. The overpayment involved only basic pay.

During the providence inquiry, appellant freely acknowledged that he had a moral duty to report and account for the double payments. When pressed by the military judge's suggestion that his course of dealing with finance created a legal duty to act, he finally assented. Appellant also disavowed any understanding that his use of the money in the California account deprived the government of the use and benefit of that property. Rather, his view was that he owed the government a debt and that the finance system would recoup it.

The providence inquiry and stipulation of fact provide no hint or suggestion that appellant made any affirmative *misrepresentations*, made untrue certifications, or took deceptive actions designed to create or perpetuate the payroll overpayments. In all his dealings with finance officials, appellant appeared open and forthright about his situation.

### LAW

Before accepting a guilty plea, the military judge must explain the elements of the offense and ensure that a factual basis for the plea exists. *United States v. Faircloth*, —— M.J. —— (U.S. Armed Forces 27 Sep. 1996); *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980). "Mere conclusions of law recited by the accused are insufficient to provide a factual basis for a guilty plea." *United States v. Outhier*, —— M.J. ——, slip op. at 9 (U.S. Armed Forces 30 Sep. 1996); *United States v. Terry*, 21 U.S.C.M.A. 442, 45 C.M.R. 216 (1972); *United States v. Duval*, 31 M.J. 650 (A.C.M.R. 1990). While the accused's admissions need not be based on personal knowledge or recollection, "*the accuse[d] must be convinced of,* and able to describe all the facts necessary to establish guilt." Rule for Courts–Martial [hereinafter R.C.M.] 910(e) discussion (emphasis added); *Faircloth*, slip op. at 7.

When an accused sets up matters substantially inconsistent with the plea, or appears to have otherwise entered the plea of guilty improvidently, the military judge must reject the plea. UCMJ art. 45(a), 10 U.S.C. § 845(a); *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991). "A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion." *United States v. Eberle*, 44 M.J. 374 (U.S. Armed Forces 1996) (citations omitted).

As drafted, Article 121, UCMJ, combined several property offenses, one of which was embezzlement (wrongful withholding-type larcenies). *United States v. Castillo*, 18 M.J. 590 (N.M.C.M.R.1984). *See also Faircloth*, slip op. at 8; Manual for Courts–Martial, United States, 1995, Part IV, para. 46c(1)(a) [hereinafter MCM, 1995]; *United States v. Antonelli*, 35 M.J. 122, 124 (C.M.A.1992). "When testing whether an offense of wrongful withholding has been ... providently pleaded to, we search for two factors ...: (1) a fiduciary relationship; and, (2) an initial lawful possession." *Castillo*, 18 M.J. at 595 (citing *United States v. McFarland*, 8 U.S.C.M.A. 42, 23 C.M.R. 266 (1957)). A fiduciary relationship exists, and includes the legal duty to return or deliver to the owner entrusted property, when such a return or delivery is due or demanded. MCM, 1995, para. 46c(1)(b).

As a general rule, no inherent legal duty to account for erroneously transferred property exists. Even if the recipient is aware of the error, absent a specific, identifiable fiduciary relationship, such circumstances involve no criminality and cannot support a guilty plea to wrongful appropriation as a matter of law. *Castillo*, 18 M.J. 590; *United States v. Viverito*, 34 M.J. 872 (A.C.M.R.1992); *United States v. Neff*, 34 M.J. 1195 (A.F.C.M.R.1992). *See generally United States v. Thomas*, 36 M.J. 617 (A.C.M.R.1992), *pet. granted*, 36 M.J. 378 (C.M.A.1992) (noting but questioning the continued validity of this rule).

An exception to this general rule involves accepting increased allowances on behalf of one's dependents. *Antonelli*, 35 M.J. 122. However, *Antonelli* specifically distin-

guishes allowances from salary, and that precedent does not extend to erroneous overpayments of basic pay. *Id.* at 127–28; *United States v. Watkins,* 32 M.J. 527 (A.C.M.R. 1990).

## ANALYSIS

■ The plea to Charge II and its Specification is improvident for several reasons. First, we hold that the providence inquiry was defective because the military judge induced appellant to acquiesce in the conclusion that he had a legal duty to account for the double payments when, by case law, no such duty exists.

Appellant's providence inquiry established that only pay, not allowances, made up his windfall. However, current case law imposes no legal duty to report or account for this class of property when erroneously received.

■ While admitting to a moral duty, appellant specifically disavowed any legal duty to account for the double payments. We believe his later acceptance of such a duty was prompted by the military judge's very forceful, leading inquiry producing in essence only "yes" answers. We regard this "virtual repudiation, without explanation, of the facts" relating to his belief about the nature of his "duty" with great skepticism. *See Castillo,* 18 M.J. at 593. We hold that this amounted to nothing more than assent to a mere legal conclusion of the military judge, a conclusion that is unsupported by precedent.

· [9] Our assessment is further supported by the fact that when pressed on the matter, appellant revealed his understanding of his situation to be nothing more than an indebtedness to the government which he fully expected to have automatically recouped from his future pay. His concern focused on the growth of this debt, not a legal duty to act, and this motivated his efforts to correct the situation. Finally, it is axiomatic that a debt cannot be the subject of a wrongful appropriation charge. *United States v. Mervine,* 26 M.J. 482 (C.M.A.1988); *United States v. Rhyns,* 31 M.J. 922 (A.C.M.R.1990).

Nothing in the providence inquiry established a separate basis to find a legal duty to account in appellant's situation. Unlike in *Antonelli,* appellant made no certification nor did he take any affirmative action to create or continue the pay problem. Further, there was no discussion or evidence of any law, regulation, order, course of dealing, or other independent circumstance upon which a duty to account could be based. Also, no demand to repay or account was ever made upon appellant. On the contrary, we regard appellant's case as similar to the situation in *Watkins,* especially given the failure of the government's agents to solve the problem he reported to them.

In sum, we find that as matter of law, no legal duty to account or report applied to appellant's circumstances. However, even if a basis for such a duty can be established, we find that there was no factual predicate for appellant's plea to that duty.

■ Additionally, we find that the providence inquiry failed to establish the requisite mens rea for this offense. First, we believe the discussion concerning the "duty to account" betrays a lack of intent to temporarily deprive the government of the use of its property. Appellant's view that this was a debt, his expectation that it would be automatically recouped, and his efforts to resolve the issue all belie such an intent. More importantly, however, when· specifically asked about this matter, appellant's only response was, "I didn't stop and think about it." We have carefully reviewed the record and find no point at which appellant ever agreed to, or admitted, that he possessed the requisite intent. At a minimum, this providence inquiry fails to persuade us that appellant was "convinced of, and able to describe all the facts necessary to establish guilt." *See* R.C.M. 910(e).

For these reasons, we hold that the appellant's plea of guilty to wrongful appropriation is improvident. In the interest of judicial economy, we will set aside the conviction for this offense and reassess the sentence.

The findings of guilty to Charge II and its Specification are set aside and Charge II and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted and the entire record, we affirm

only so much of the sentence as provides for a bad-conduct discharge, confinement for two months, forfeiture of $569.00 of pay per month for two months, and reduction to Private E1. *See United States v. Sales,* 22 M.J. 305 (C.M.A.1986).

Senior Judge GRAVELLE and Judge JOHNSTON concur.