# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, M.C. HOLIFIELD, A.Y. MARKS**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**MICHAEL D. STEVENS**
**STAFF SERGEANT (E-6), U.S. MARINE CORPS**

**NMCCA 201400330**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged:** 2 June 2014.
**Military Judge:** Maj N.A. Martz, USMC.
**Convening Authority:** Commanding Officer, Marine Corps Combat Services Support Schools, Training Command, Camp Lejeune, N.C.
**Staff Judge Advocate's Recommendation:** Capt M.G. Blackborow, USMC.
**For Appellant:** CDR Ricardo A. Berry, JAGC, USN.
**For Appellee:** Maj Tracey L. Holtshirley, USMC.

**10 November 2015**

---
**PUBLISHED OPINION OF THE COURT**
---

BRUBAKER, Senior Judge:

A military judge sitting as a special court-martial convicted the appellant, pursuant to his pleas, of two specifications of attempted larceny and 12 specifications of larceny or wrongful appropriation in violation of Articles 80 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 921. The military judge sentenced the appellant to 30 days' confinement, reduction to pay grade E-1, and a bad-conduct discharge (BCD). The convening authority (CA) approved the sentence as adjudged but, pursuant to a pretrial agreement, suspended all confinement.

The appellant initially raised two assignments of error (AOE): (1) that his pleas of guilty to Specifications 4-8, 12, and 13 of Charge I were improvident because the factual basis as to the actual victim was not established; and (2) that the staff judge advocate's recommendation (SJAR) and court-martial order (CMO) failed to reflect that the military judge merged Specifications 1 and 2 of Charge I.

After initial review, we specified an additional issue: whether the "electronic media" alleged in numerous specifications are "property" cognizable under Article 121, UCMJ. We find they are not; thus, the pleas to those specifications were improvident. This moots the appellant's first AOE. We address his second AOE below.

## Background

The appellant was an instructor at the Logistics Operations School, Camp Lejeune, North Carolina. When not teaching, he and his co-workers worked out of an "instructor bullpen"[1]—a shared workspace consisting of cubicles. On several occasions, while fellow instructors were teaching classes or otherwise away from their cubicles, the appellant took credit or debit cards out of their wallets without their permission. He copied the account numbers, expiration dates, and security codes, then returned the cards to the owners' wallets. This formed the basis for Charge I, Specifications 1-2 and 9-11—wrongful appropriation of the cards.

The appellant then used the information to make online purchases of what the Government styled "electronic media."[2] The "media" included an audiobook and music downloaded to his iPhone, video games to his Sony PlayStation, and two "Boatloads of 2400 donuts" for use as virtual currency in a smart phone game based on the television show "The Simpsons." He tried to make two further purchases which the merchant declined. Based on these transactions, Specifications 3-8 and 12-13 of Charge I allege that the appellant stole electronic media from Sony (in two instances) and Apple iTunes (in the remainder) and the two specifications of Charge II allege he attempted to steal electronic media from Apple iTunes.

The appellant pleaded guilty to both charges and all specifications. After merging Specifications 1 and 2 of Charge I,

---

[1] Record at 69.

[2] Charge Sheet.

2

the military judge found him guilty of both Charges and all specifications.

## Analysis

### I.   Providence of Pleas

We review a military judge's decision to accept a guilty plea for an abuse of discretion.  *United States v. Inabinette,* 66 M.J. 320, 322 (C.A.A.F. 2008).  A military judge abuses his discretion if he accepts a guilty plea without an adequate factual basis to support it or if he does so based on an erroneous view of the law. *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012).  We review questions of law——including whether "electronic media" as alleged in this case constitute "property" under Article 121——*de novo*.  *Id.*

Article 121, UCMJ, defines larceny as:

> wrongfully tak[ing], obtain[ing], or withhold[ing], by
> any means, from the possession of the owner or of any
> other person any money, personal property, or article
> of value of any kind . . . with intent permanently to
> deprive or defraud another person of the use and
> benefit of property or to appropriate it to his own
> use or the use of any person other than the owner . .
> . .

In enacting Article 121, Congress consolidated three common-law offenses:  larceny, embezzlement, and obtaining by false pretenses——"no more and no less." *United States v. Antonelli*, 35 M.J. 122, 124 (C.M.A. 1992).  Thus, Article 121 "must be interpreted in light of the common-law meaning of those offenses." *United States v. Mervine*, 26 M.J. 482, 483 (C.M.A. 1988).  Common-law larceny requires "'the trespassory taking and carrying away of the personal property of another with intent to steal.'"  *Id.* (quoting Rollin M. Perkins & Ronald N. Boyce, Criminal Law 292 (3d ed. 1982)).  It also requires that "the object of the larceny be *tangible and capable of being possessed*." *Id.* (citing *United States v. Abeyta*, 12 M.J. 507, 508 (A.C.M.R. 1981) ("the terms 'money, personal property, or article of value,' as used in Article 121, were not meant to encompass items not having a corporeal existence.")) (emphasis added); *see also United States v. Holley*, 42 M.J. 779, 781 (N.M.Ct.Crim.App. 1995).

We find no further guidance in military case law on whether electronic media as alleged here can be the object of larceny under Article 121.  But——saddled with a statute anchored to common law

3

developed before electronic media even existed——we conclude that electronic media without corporeal form do not fall within the ambit of Article 121.

The property the appellant obtained using others' money was intangible.  The "donuts" in the Simpsons game——to pick the easiest example——could not be picked up, touched, or carried away because they were not real.  They were conceptual, merely entitling the person who paid the fee for them to additional game play.  When the appellant obtained them through fraud, these "donuts" existed and had value in the cyber world, but they had no corporeal existence in ours.  Similarly, the music, audiobooks, and game software had no physical form, but instead represented the vendors' willingness to allow the items to be downloaded——copied——for a fee.

The military judge (who is to be commended for *sua sponte* spotting and thoughtfully analyzing the issue of tangibility despite our differing with his legal conclusion) found that once the appellant downloaded the media to his device, "the properties convert from that of pure intangible data to that more akin to traditional corporeal tangible property."[3]  He then listed characteristics that he believed made the downloaded media similar to traditional tangible products, including that they "can be physically transported by the new owner once it is downloaded onto their respective electronic device."[4]

But while the appellant transferring the media to his devices may have given them a corporeal form, that only highlights that at the time the appellant *obtained* the property, it was *not* in corporeal form.  Common law larceny requires asportation——a "carrying away."  *Mervine*, 26 M.J. at 483.  At the time the appellant "carried away" the media, they were incorporeal.  It is immaterial whether *after* the carrying away, they were transformed to corporeal form——particularly when the corporeal property (the smart phone and the game console) belonged to *the appellant*.

Finally, there was no "trespassory taking," *id.*, in this case because Sony and Apple never lost possession of the media.  There were not 2400 fewer donuts on their shelves or one less copy of the song "Radioactive" by Imagine Dragons in their physical inventory because of the taking.[5]

---

[3] Record at 21.

[4] *Id.*

[5] *See* ARTICLE: THE PROTECTION OF DIGITAL INFORMATION AND PREVENTION OF ITS UNAUTHORIZED ACCESS AND USE IN CRIMINAL LAW, 28 J. Marshall J. Computer & Info.

Thus, the appellant's obtaining of the electronic media alleged did not, as a matter of law, constitute larceny in its common-law sense under Article 121. To find otherwise constituted an abuse of discretion and rendered improvident the appellant's pleas to Specifications 3-8 and 12-13 of Charge I and Charge II and its two specifications.[6]

## II. SJAR and CMO Error

The military judge rightly merged Specifications 1 and 2 of Charge I, which distinctly alleged wrongful appropriation of a credit card and a debit card from the same victim at the same time. The SJAR and CMO failed to reflect this. The appellant, who did not object to this error in the SJAR, now avers it prejudiced him because an accurate accounting of the findings in the SJAR could have persuaded the CA to adopt the recommendation of the military judge and suspend the BCD.

We disagree. When assessing prejudice for post-trial error in SJARs and CMOs, courts only require that the appellant make "some colorable showing of possible prejudice." *United States v. Chatman*, 46 M.J. 321, 323-24 (C.A.A.F. 1997). We find that the appellant has not met even this low threshold. The merged specifications themselves——which are detailed on the CMO——make clear they alleged wrongful appropriation from the same victim at the same location on the same date. The CMO also indicates that the CA considered the record of trial, which makes plain that the appellant wrongfully appropriated credit and debit cards from three different fellow staff noncommissioned officers on four separate

---

L. 523, 532-533 ("Traditional theft statutes also required that the defendant intend to permanently deprive the other party of the property. Copying a [computer] program or data does not meet this standard because the original owner is not permanently deprived of the program or data, but merely loses some control of the property.") (Endnote omitted).

[6] Federal civil courts have also struggled to define "property" in an increasingly electronic world. *See, e.g.*, *Dowling v. United States*, 473 U.S. 207 (1985) (finding that bootleg copies of Elvis Presley recordings, absent a physical taking, do not constitute "goods, wares, [or] merchandise" under the National Stolen Property Act (NSPA)); *United States v. Brown*, 925 F.2d 1301, 1308 (10th Cir. 1991) (applying *Dowling* to hold that a computer program without corporeal form is not property cognizable by the NSPA). To address burgeoning computer-related criminal activity, Congress in 1984 enacted the Computer Fraud and Abuse Act (CFAA), 18 U.S. Code § 1030, and has amended it a number of times since. Congress has enacted a panoply of other statutes addressing crimes in the electronic age, such as 15 U.S. Code § 1644, which prohibits fraudulent use of credit cards. Military law would greatly benefit from similar statutory modernization. Meantime, while the Government in this case may have been able to look to Federal law by analogy or incorporation under Article 134, its reliance on common-law larceny for the taking of intangible goods was misplaced.

occasions and used the information to purchase hundreds of dollars' worth of electronic media.

The military judge submitted a letter to the CA. In it, he specifically pointed out these circumstances and recommended clemency in the form of suspending the BCD due to significant stressors in the appellant's life and an otherwise exemplary record. The CA, who had already given the appellant the benefit of a highly favorable pretrial agreement that suspended all confinement and forfeitures, declined to grant further clemency. Under these circumstances, we find no colorable showing of possible prejudice merely because the SJAR and CMO failed to note that five specifications of wrongful appropriation were merged into four.

The appellant is, nevertheless, entitled to have the CMO accurately reflect the results of the proceedings. *United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998). We thus order corrective action below.

## III. Sentence Reassessment

Our action on the findings requires us to determine whether we are able to reassess the sentence. We conclude we can.

Courts of Criminal Appeal have broad discretion to reassess sentences. *United States v. Winckelmann*, 73 M.J. 11, 15 (C.A.A.F. 2013). But we may only do so if we can reliably and confidently determine that, absent the error, the sentence would have been at least of a certain magnitude. *United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006); *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000). If we cannot do this, we must order a rehearing. *Harris*, 53 M.J. at 88. A reassessed sentence must not only "be purged of prejudicial error[,]" but "also must be 'appropriate' for the offense involved." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

We apply the totality of the circumstances of each case to make sentence reassessment determinations, guided by the following "illustrative, but not dispositive, points of analysis":

(1) Whether there has been a dramatic change in the penalty landscape or exposure.

(2) Whether sentencing was by members or a military judge alone. We are more likely to be certain of what

6

sentence a military judge would have imposed as opposed to members.

(3) Whether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses and, similarly, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses.

(4) Whether the remaining offenses are of the type with which appellate judges should have the experience and familiarity to reliably determine what sentence would have been imposed at trial.

*Winckelmann*, 73 M.J. at 15-16.

With all these principles in mind, we find that we can reassess the sentence and do so to affirm only so much as provides for reduction to pay grade E-1 and a bad-conduct discharge. The punitive exposure has not changed dramatically. The maximum punishment for the affirmed findings includes confinement for nine months; reduction to pay grade E-1; forfeiture of two-thirds' pay per month for nine months; and, applying the escalator clause of RULE FOR COURTS-MARTIAL 1003(d)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), a BCD.

We recognize that dismissing ten larceny specifications——leaving us with four affirmed wrongful appropriation specifications——is a significant change to the overall sentencing landscape. But the remaining *Winckelmann* factors leave us convinced that the sentence as reassessed not only purges the error, but is appropriate. First, sentencing was by military judge. Second, the remaining offenses——wrongfully appropriating fellow Marines' debit and credit cards with a purpose to make fraudulent purchases——capture the gravamen of the misconduct. Third, evidence about the appellant's use of the card information to buy entertainment media at the expense of his trusting fellow Marines and the impact that had on others would likely have remained admissible and relevant either as evidence of wrongfulness or as aggravation under R.C.M. 1001(b)(4). Finally, we have sufficient experience and familiarity with the remaining offenses to reliably determine what sentence would have been imposed at trial.

7

## Conclusion

The findings of guilty to Specifications 3-8 and 12-13 of Charge I and to Charge II and both of its specifications are set aside.  The remaining findings of guilty are affirmed.  Specifications 3-8 and 12-13 of Charge I and Charge II and both of its specifications are dismissed.  Only so much of the sentence as provides for reduction to pay grade E-1 and a bad-conduct discharge is affirmed.  The supplemental CMO shall correctly reflect that the military judge merged Specifications 1 and 2 of Charge I.

Judge HOLIFIELD and Judge MARKS concur.

For the Court


R.H. TROIDL
Clerk of Court