In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 23-3100

JOSE ANTONIO COSSIO, JR.,

*Plaintiff-Appellant,*

*v.*

THE AIR FORCE COURT OF CRIMINAL APPEALS, et al.,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-00110 — **Harry D. Leinenweber,** *Judge.*

———————————

ARGUED SEPTEMBER 19, 2024 — DECIDED FEBRUARY 27, 2025

———————————

Before ROVNER, HAMILTON, and KIRSCH, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This appeal presents a relatively rare collateral challenge to military court convictions in civilian courts. Plaintiff-appellant Jose Antonio Cossio, Jr., seeks reconsideration of his bad-conduct discharge from the Air Force stemming from court-martial convictions in 2004. The discharge resulted from a prank gone sideways. According to Cossio, he learned that another airman had stolen money from Cossio's friend. Cossio used his access to

an Air Force computer system to obtain the other airman's social security number. He then altered the airman's payroll information to route his next paycheck to an orphanage in Siberia. In December 2004, a military court convicted Cossio of larceny under 10 U.S.C. § 921 and of violating the Computer Fraud and Abuse Act under 18 U.S.C. § 1030, as well as other charges. He was sentenced to ten months' confinement, a demotion, and a fine, and he received a bad-conduct discharge from the Air Force. The convictions and sentence were affirmed on direct appeal in the military courts.

For nearly twenty years, Cossio has repeatedly challenged his convictions and sentence. In this case, he petitioned for writs of habeas corpus and mandamus, asking the district court to order the Air Force to resentence him or to change his discharge status. He argues that his conduct did not meet the required elements of larceny because he never possessed the other airman's paycheck and his pay never took the form of tangible property. He also argues that the Supreme Court's decision in *Van Buren v. United States*, 593 U.S. 374 (2021), shows his conviction under the Computer Fraud and Abuse Act should be deemed invalid because he "did not exceed his authorized computer access" when he retrieved the other airman's personal information. Consistent with other courts' treatment of Cossio's post-appeal challenges, the district court here granted the Air Force's motion to dismiss and denied both writs. Cossio has appealed.

We affirm. As we explain below, the district court properly determined that Cossio did not meet the requirements for habeas corpus jurisdiction because he is not "in custody" as required under 28 U.S.C. § 2241(c). Cossio was released from prison nearly two decades ago. The present-day

consequences of his convictions are collateral to his criminal punishment and do not restrain his physical liberty of movement. Cossio's petition for a writ of mandamus also fails because he does not meet several essential elements. Cossio has not shown the Secretary of the Air Force has a clear, nondiscretionary duty to grant the requested relief, and more generally, Cossio has not shown a clear right to issuance of the writ.

I.  *Factual and Procedural History*

Cossio served in the United States Air Force from July 2000 to November 2008. While working in a helicopter-maintenance squadron, Cossio accessed an internal software system to locate the social security number of another airman. Cossio used this information to route the other airman's next paycheck to a Siberian orphanage.

After Cossio's action was discovered, he faced trial by general court-martial in December 2004. Cossio was charged with larceny in violation of Article 121 of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 921 Art. 121, and three counts of violating Article 134 of the UCMJ, 10 U.S.C. § 934 Art. 134 (granting military jurisdiction over "crimes and offenses" besides those otherwise enumerated in the UCMJ). The first count under Article 134 concerned Cossio's use of the other airman's social security number with intent to commit larceny in violation of 18 U.S.C. § 1028, a federal statute governing fraud in connection with identity theft. The second count charged Cossio with exceeding his authorized computer access to obtain a social security number of another airman in violation of 18 U.S.C. § 1030, the Computer Fraud and Abuse Act. The third count charged communication of a

threat to injure another person. The court-martial convicted Cossio on all counts.

Cossio was sentenced to a bad-conduct discharge, reduction to the lowest enlisted grade, confinement for ten months, and a fine. As a result of his discharge status, Cossio says, he has struggled to stay employed and is ineligible for education, housing, and healthcare assistance through the Department of Veterans Affairs. In this appeal, Cossio challenges his convictions for larceny and for computer fraud and abuse.

We must review the long history of Cossio's appellate and post-conviction litigation to highlight the prior reviews of his case. First, on direct appeal in 2006, Cossio challenged his convictions for computer fraud and abuse and communication of a threat to injure. *United States v. Cossio*, No. ACM 36206, 2006 WL 2550233, at *1 (A.F. Ct. Crim. App. Aug. 24, 2006). The court affirmed, finding "overwhelming evidence in the record of trial to support the court-martial's findings of guilty" on both charges. *Id.* In January 2007, the United States Court of Appeals for the Armed Forces denied Cossio's petition for further review. *United States v. Cossio*, 64 M.J. 401 (C.A.A.F. Jan. 30, 2007).

In November 2007, Cossio, alleging a *Brady* violation in his prosecution, unsuccessfully sought a writ of coram vobis.[1] *United States v. Cossio*, No. ACM 36206 PET, 2008 WL 513520, at *3 (A.F. Ct. Crim. App. Feb. 15, 2008). In denying the writ,

---

[1] A writ of error coram vobis is a writ of error sent by an appellate court to a trial court for correction of the trial court's error. A writ of error coram nobis is a writ of error issued by a court to correct an error in its own judgment. Cossio has petitioned for both writs.

the court wrote that Cossio's "guilt to the offenses is overwhelming." *Id.* at *2. In August 2008, Cossio filed a petition for extraordinary relief in the nature of a writ of prohibition to stay execution of his bad-conduct discharge, which was denied. *United States v. Cossio*, Misc. Dkt. No. 2008-02 (formerly ACM 36206), 2008 CCA LEXIS 687, at 1 (A.F. Ct. Crim. App. Sept. 15, 2008).

In June 2010, Cossio filed another petition for extraordinary relief in the nature of a writ of coram vobis, alleging that a witness at his trial "may have committed perjury, further acts of larceny, and conspired with another witness to hide such conduct from the court." *United States v. Cossio*, Misc. Dkt. No. 2010-10, 2010 CCA LEXIS 320, at 2 (A.F. Ct. Crim. App. July 1, 2010) (internal quotations marks omitted). The court denied Cossio's petition because he failed to meet several threshold requirements for the writ he sought. *Id.* at 4–5.

Cossio then filed a petition challenging his larceny conviction and seeking reinstatement or, alternatively, honorable discharge, back pay, and other relief pursuant to the Little Tucker Act, 28 U.S.C. § 1346(a)(2). See *Cossio v. Donley*, 527 F. App'x 932, 933–34 (Fed. Cir. 2013). The Federal Circuit affirmed the district court's dismissal of that petition because Cossio had failed to raise his constitutional issues in the military justice system and had received full and fair consideration of his claims in prior actions. *Id.* at 935–37.

In October 2014, Cossio again petitioned for extraordinary relief in the nature of a writ of coram vobis, seeking reversal of his 2004 larceny conviction. See *United States v. Cossio*, Misc. Dkt. No. 2014-14, 2015 WL 5138626, at *3 (A.F. Ct. Crim. App. Aug. 17, 2015). Again, the petition was denied because Cossio

failed to meet several threshold requirements for the writ. *Id.* at *3–*4.

In June 2021, Cossio filed a petition for writs of coram vobis and mandamus challenging his conviction under the Computer Fraud and Abuse Act on the basis of the Supreme Court's decision in *Van Buren*. *In re Cossio*, Misc. Dkt. No. 2021-04, 2021 WL 6105497, at *3 (A.F. Ct. Crim. App. Dec. 20, 2021). The Air Force Court of Criminal Appeals denied his petition, finding that Cossio did not meet the threshold elements for issuance of the writs and that his various challenges did not warrant setting aside his convictions. *Id.* at *4–*5.

Then, in January 2022, Cossio filed this action in the Northern District of Illinois. Cossio filed the complaint pro se, but the district court recruited counsel for him.[2] The district court ultimately granted the Air Force's motion to dismiss and entered a judgment dismissing the case "with prejudice" for lack of subject matter jurisdiction and failure to state a claim. This appeal followed.

We address first Cossio's petition for a writ of habeas corpus and then his petition for a writ of mandamus, reviewing de novo the district court's order dismissing both petitions. See *E.F.L. v. Prim*, 986 F.3d 959, 962 (7th Cir. 2021) (affirming dismissal of a habeas petition after de novo review of subject matter jurisdiction).

---

[2] The law firm of Akerman LLP and attorneys Joel D. Bertocchi, Jani K. Mikel, and Mark S. Bernstein have ably represented Cossio in the district court and in this appeal. They have the thanks of this court for their assistance to their client and the courts.

II. *Habeas Corpus*

The district court properly dismissed Cossio's petition for a writ of habeas corpus. The habeas statute under which Cossio proceeds, 28 U.S.C. § 2241(c), requires that the petitioner be "in custody." A habeas petitioner is in custody if "his physical liberty of movement is limited in a non-negligible way, and that limitation is a *direct* consequence of the challenged conviction." *Stanbridge v. Scott*, 791 F.3d 715, 719 (7th Cir. 2015) (emphasis in original). We affirmed dismissal of a habeas petition in *Stanbridge* because the habeas petitioner was not "in custody." That petitioner was subject to restraints on his physical liberty of movement as a result of civil confinement, but that civil confinement was "clearly a collateral consequence of his criminal conviction, as it was not part of the judgment in the criminal case." *Id.* at 721, citing *George v. Black*, 732 F.2d 108, 110–11 (8th Cir. 1984).

To seek habeas relief, Cossio must be subject to non-negligible restrictions on his physical liberty or movement resulting directly from the judgment he challenges, his convictions and sentence in the 2004 court-martial. *Stanbridge*, 791 F.3d at 719–20. What might count as such restrictions? One well established example would be a petitioner on parole or supervised release, who would be "in custody" for purposes of the habeas statute. See *Jones v. Cunningham*, 371 U.S. 236, 242–43 (1963) (conditions and restrictions of parole "significantly restrain [a] petitioner's liberty to do those things which in this country free men are entitled to do. Such restraints are enough to invoke the help of the Great Writ."); see also *Clarke v. United States*, 703 F.3d 1098, 1101 (7th Cir. 2013) ("supervised release is classified as a form of custody"). The same is true for a petitioner sentenced to 500 hours of community

service. See *Barry v. Bergen County Probation Dep't*, 128 F.3d 152, 161–62 (3d Cir. 1997) ("[A]n individual who is required to be in a certain place—or in one of several places—to attend meetings or to perform services, is clearly subject to restraints on his liberty not shared by the public generally."). Similarly, petitioners released on their own recognizance while awaiting sentencing are also deemed "in custody." See *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973) (finding petitioner released on own recognizance "in custody" because "[h]is freedom of movement rests in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice").

A. *Restraints on Physical Liberty of Movement.*

Now, so long after Cossio's release from military prison, the consequences of his convictions no longer restrain his physical liberty of movement so as to satisfy the "in custody" requirement for habeas relief. Cossio claims that, as a result of his convictions and bad-conduct discharge, he has had difficulty obtaining and keeping a job, is unable to receive VA benefits, education, or housing assistance, and has endured ongoing harm and stigma. While courts "have very liberally construed the 'in custody' requirement for purposes of federal habeas," a petitioner must still face a present restraint from a conviction. See *Maleng v. Cook*, 490 U.S. 488, 492 (1989) (habeas petitioner was not "in custody" when prison sentence had expired despite "possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted").

Not every loss of a privilege resulting from a criminal conviction places a petitioner "in custody" under § 2241(c). For example, a suspension of driving privileges is not the sort of

"severe restraint" on liberty for which habeas corpus relief may be available. *Harts v. Indiana*, 732 F.2d 95, 96–97 (7th Cir. 1984), quoting *Hensley*, 411 U.S. at 351. Neither is a loss of a medical license. *Lefkowitz v. Fair*, 816 F.2d 17, 20 (1st Cir. 1987) (holding that revocation of medical license upon petitioner's conviction "does not constitute the type of grave restraint on liberty or the sort of ongoing governmental supervision which are unavoidable prerequisites of actionable 'custody'"). Nor is required registration as a sex offender, at least when not accompanied by restrictions on movement. *Virsnieks v. Smith*, 521 F.3d 707, 719–20 (7th Cir. 2008) (holding that registration requirement did not support habeas claim because statute did not impose "any significant restriction on a registrant's freedom of movement").

The consequences of Cossio's convictions are more like the collateral ones in *Harts*, *Lefkowitz*, and *Virsnieks* than the direct restraints in *Jones*, *Barry*, and *Hensley*. Like the driving privileges forfeited by the petitioner in *Harts*, Cossio's loss of VA benefits "may entail hardship" but does not "significantly restrain [his] liberty to do those things which in this country free men are entitled to do…." 732 F.2d at 96, quoting *Jones*, 371 U.S. at 243**.** Similar to the loss of a medical license in *Lefkowitz*, Cossio's "[a]dverse occupational and employment consequences are a frequent aftermath of virtually any felony conviction." 816 F.2d at 20. And like the registration requirement in *Virsnieks*, the stigma associated with Cossio's discharge is a collateral consequence "of a conviction that do[es] not impose a severe restriction on [his] freedom of movement." 521 F.3d at 720.

Cossio does not face restrictions like those faced by parolees. He is not "confined by the parole order to a particular

community, house, and job at the sufferance of his parole officer." *Jones*, 371 U.S. at 242. He does not "live in constant fear that a single deviation [from the conditions of parole], however slight, might be enough to result in his being returned to prison to serve out the very sentence he claims was imposed upon him in violation of the United States Constitution." *Id.* Cossio also has no community service obligation that he must complete to avoid further punishment. Cf. *Barry*, 128 F.3d at 161–62. And Cossio's freedom of movement is not determined by "judicial officers, who may demand his presence at any time and without a moment's notice." *Hensley*, 411 U.S. at 351. In short, Cossio's convictions have not for many years imposed any court-ordered restrictions or obligations on his movement.

We recognize that a bad-conduct discharge is no mere slap on the wrist. We accept for purposes of argument Cossio's account of the struggles he has faced because of his bad-conduct discharge. But adopting Cossio's interpretation of the "in custody" requirement of the federal habeas statute "would read the 'in custody' requirement out of the statute…." *Maleng*, 490 U.S. at 492.

To avoid this "in custody" problem, Cossio relies on *Kauffman v. Sec'y of the Air Force*, 415 F.2d 991, 994–95 (D.C. Cir. 1969), to argue that the stigma associated with his bad-conduct discharge should be sufficient to obtain collateral review of his military convictions and sentence. *Kauffman* does not help Cossio satisfy the in-custody requirement. In *Kauffman*, the D.C. Circuit affirmed dismissal of a civil action brought as a collateral challenge to an airman's convictions stemming from alleged improper contacts with East German intelligence agents. *Id.* at 992. To secure a conviction, United

States authorities resorted "to means which the Court of Military Appeals described as 'massive and deliberate violations of appellant's constitutional rights.'" *Id.* These violations included multiple warrantless and unjustified searches of Kauffman's home, as well as covert monitoring of his conversations with his counsel. *Id.* at 992–93.

The D.C. Circuit recognized that habeas corpus review was not available to Kauffman because he was no longer in custody when he filed his civil action: "Appellant lost his opportunity to obtain civilian review by writ of habeas corpus because he had completed his two-year term of confinement at hard labor before he had exhausted his military remedies." *Id.* at 996. The *Kauffman* opinion then went on to consider whether habeas offered the only path to collateral civilian review of a military conviction or whether other avenues might be available. Without specifying another statutory path, the D.C. Circuit assumed that such collateral review should be available for constitutional challenges (even when habeas is unavailable because the petitioner is not in custody), apparently without deference to military courts at least on questions of constitutional law. *Id.* at 997. On the merits, the court then concluded that Kauffman's convictions were not tainted by any violations of his constitutional rights, so that his case was properly dismissed. *Id.* at 998–1000.

In concluding that some form of non-habeas collateral review should be available for constitutional challenges even by a defendant who was not in custody, the *Kauffman* court wrote that "a military discharge under other than honorable conditions imposes a lifelong disability of greater consequence [than a loss of liberty] for persons unlawfully convicted by courts martial." *Id.* at 995. Cossio quotes this

comment to urge this court to find that his discharge status renders him in custody for habeas relief.

One basic problem with this theory is that *Kauffman* assumed that physical confinement was required for habeas relief, *id.* at 996, which is the relief Cossio seeks. Although more recent decisions have expanded custody to petitioners released from physical confinement, *Kauffman* did not. Therefore, *Kauffman* did not address whether stigma associated with a bad-conduct discharge is sufficient to meet the in-custody requirement of federal habeas. Nor did *Kauffman* actually identify an alternative basis for collateral relief, other than perhaps a claim directly under the Constitution. More broadly, to the extent that *Kauffman* may have authorized any other avenues for collateral relief from military convictions under the Constitution—a point on which we express no opinion—Cossio's situation is different in three critical ways. First, he is relying on the habeas statute that includes the custody requirement. Second, his challenges are not constitutional but statutory. Third, unlike Kauffman, Cossio has previously sought and obtained both direct and collateral review of his statutory challenges in civilian courts, and he has repeatedly lost on those challenges. Accordingly, *Kauffman* does not provide a basis to grant Cossio's petition for a writ of habeas corpus.

B. *Direct Consequences.*

To meet the custody requirement of federal habeas, the consequences of Cossio's conviction must be direct. *Stanbridge*, 791 F.3d at 719. Direct consequences include parole or community service imposed "as part of the authorized punishment, and included in the court's judgment." *Id.*, quoting *User Guide Frequently Asked Questions*, *Nat'l Inventory of*

*Collateral Consequences*, https://perma.cc/NZ2V-2QTJ at 5 (last visited February 26, 2025); see also *Jones*, 371 U.S. at 242–43 (order placed petitioner "under the custody and control of the Virginia Parole Board"); *Barry*, 128 F.3d at 161 (order mandated community service under direction of local community service program). Here, the military court did not directly impose Cossio's employment struggles, loss of benefits, and stigma. Instead, the law treats these consequences as incidental results of Cossio's discharge.

We assume that Cossio, like countless others with criminal records, suffers from stigma and other collateral consequences that complicate his life. However, adopting Cossio's view of "custody" would seem to expand habeas jurisdiction to every person ever convicted of a federal offense. The result would be both unworkable and inconsistent with the important but limited role of habeas corpus. See *Lefkowitz*, 816 F.2d at 20 ("To hold that the custody requirement is so elastic as to reach such sequellae would be to stretch the concept of custody out of all meaningful proportion, to render it limp and shapeless…."). The district court correctly dismissed Cossio's petition for a writ of habeas corpus.

III. *Mandamus*

The district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Courts have interpreted this to mean that § 1361 "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Center for Dermatology & Skin Cancer, Ltd. v.*

*Burwell*, 770 F.3d 586, 589 (7th Cir. 2014) (internal quotation marks omitted), quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Then, "[i]f a plaintiff's allegations survive *Ringer*'s jurisdictional threshold, three elements must be met for the court to issue a writ: '(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; (3) no other adequate remedy available.'" *Id.*, quoting *Burnett v. Bowen*, 830 F.2d 731, 739 (7th Cir. 1987).

Section 1552(a)(1) of Title 10 of the United States Code provides that the Secretary of a military department, such as the Secretary of the Air Force, "may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." Most such corrections are to be made through boards of civilians of the executive part of the relevant military departments. *Id*.

Cossio argues that 10 U.S.C. § 1552 establishes a duty to issue a writ here. As we explain below, however, § 1552 does not impose on any Air Force official a nondiscretionary duty to provide the relief Cossio seeks. Nor has Cossio shown a clear and indisputable right to the writ. The district court correctly denied a writ of mandamus on the merits.[3]

---

[3] Our decision in *Center for Dermatology* could be read to interpret the *Ringer* requirement of a "clear nondiscretionary duty" as jurisdictional. This interpretation might allow us to bypass the issue of exhaustion of administrative remedies, which the government asserts is also jurisdictional. There would be two problems with treating the nondiscretionary duty element as jurisdictional. First, the blending of jurisdiction and merits on the duty question in both *Ringer* and *Center for Dermatology* was based on the exclusive path for judicial review under the Social Security Act set forth in 42 U.S.C. § 405(g).

Second, more generally, we recognize that this court and others have not always been entirely clear in distinguishing between jurisdictional requirements and the merits of a mandamus petition under 28 U.S.C. § 1361. See, e.g., *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc) ("But if there is no clear and compelling duty under the statute as interpreted, the district court must dismiss the action. To this extent, mandamus jurisdiction under § 1361 merges with the merits."); *City of Milwaukee v. Saxbe*, 546 F.2d 693, 700 (7th Cir. 1976) (referring to merger of jurisdiction and merits in mandamus cases); see generally 14 Wright, Miller, & Hershkoff, Federal Practice & Procedure § 3655 (4th ed. 2024) ("[W]hether jurisdiction exists under Section 1361 is intertwined with the merits because the existence of a legal duty owed to the plaintiff is critical to whether adjudicative power is present.") (internal quotation marks omitted).

We addressed this problem squarely in *Ahmed v. Dep't of Homeland Security*, holding that under § 1361, the nondiscretionary duty element goes to the merits, not subject matter jurisdiction:

> [U]nless the claim is so frivolous that it fails the *Bell v. Hood* test, the district court has jurisdiction under § 1361 to determine whether the prerequisites for mandamus relief have been satisfied: does the plaintiff have a clear right to the relief sought; does the defendant have a duty to perform the act in question; and is there no other adequate remedy available. See *Iddir* [*v. INS*, 301 F.3d 492, 499 (7th Cir. 2002).] A conclusion that any one of those prerequisites is missing should lead the district court to deny the petition, not because it now realizes that it had no power to be thinking about the case in the first place, but because the plaintiff has not demonstrated an entitlement to this form of extraordinary relief.

328 F.3d 383, 386–87 (7th Cir. 2003), citing *Coal Operators & Assoc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002). We follow that approach here and treat a nondiscretionary duty as a merits question that we will reach only after addressing the government's challenge to subject matter jurisdiction.

A. *Failure to Exhaust Administrative Remedies*

As a preliminary matter, we address the Air Force's argument that the district court lacked jurisdiction over Cossio's § 1361 mandamus petition on the theory that Cossio failed to petition a military board of civilians under § 1552 before proceeding in the district court. Administrative exhaustion through the board is not required in this case, though our reasons for this conclusion also show on the merits why Cossio is not entitled to a writ of mandamus.

First, § 1552 does not impose such an exhaustion requirement, at least on a person seeking nondiscretionary relief from a conviction imposed by a court-martial. Subsection (a)(1) of § 1552 provides:

> The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of the military department.

Neither subsection (a)(1) nor any other part of § 1552 expressly requires that a decision be sought or obtained from such a civilian board before judicial review of a court-martial conviction can be pursued. Cf. *Wilhelm v. Caldera*, 90 F. Supp. 2d 3, 7 (D.D.C. 2000) ("The relevant language under section 1552 states that the Secretary, acting though the [civilian board], may correct any error or injustice. This language shows that administrative review is possible, but does not show that it is required."); see also *St. Clair v. Sec'y of Navy*,

970 F. Supp. 645, 648 (C.D. Ill. 1997) ("[N]either the applicable statute, 10 U.S.C. § 1552, nor regulations, 32 C.F.R. Part 723–24, expressly require appeal to the [civilian board] before judicial review.").

Second, and even more to the point, the civilian board would be unable to grant the relief Cossio seeks. Section 1552 limits the purview of civilian boards acting under their authority regarding records of courts-martial:

> With respect to records of courts-martial and related administrative records pertaining to court-martial cases tried or reviewed under chapter 47 of this title (or under the Uniform Code of Military Justice (Public Law 506 of the 81st Congress)), action under subsection (a) may extend only to—
>
> (1) correction of a record to reflect actions taken by reviewing authorities under chapter 47 of this title (or under the Uniform Code of Military Justice (Public Law 506 of the 81st Congress)); or
>
> (2) action on the sentence of a court-martial for purposes of clemency.

10 U.S.C. § 1552(f).

Cossio seeks a court decision that his larceny and computer fraud and abuse convictions are invalid. He does not request that his discharge status be updated in accordance with the actions of another reviewing agency, see § 1552(f)(1), nor does he ask for clemency, see § 1552(f)(2).

Cossio is not required to petition a board that would be incapable of granting the relief he seeks. See *Martinez v. United States*, 914 F.2d 1486, 1488 (Fed. Cir. 1990) (affirming dismissal of collateral challenge to court-martial conviction; recognizing that under § 1552(f), the civilian board "has no authority to void court-martial convictions"); see also *Jorden v. Nat'l Guard Bureau*, 799 F.2d 99, 102 n.5 (3d Cir. 1986) (rejecting government's argument that plaintiff failed to exhaust remedies under § 1552 as defense in *Bivens* case: "[E]xhaustion depends on the potential adequacy of that remedy in the particular case."); *Nelson v. Miller*, 373 F.2d 474, 479 (3d Cir. 1967) (§ 1552 "was intended to supplant private bills in Congress for the correction of military records, and was not intended to affect judicial jurisdiction," affirming denial of preliminary injunction where military record board could provide meaningful relief under § 1552, and no court-martial conviction was at issue).

Requiring exhaustion in this case would also be impractical and inconsistent with § 1552(f). The issues involved are purely legal. Because resolution of this case requires "no exercise of military discretion or expertise," the federal courts are better positioned to evaluate Cossio's arguments than the civilian boards. See *Committee for GI Rights v. Callaway*, 518 F.2d 466, 474 (D.C. Cir. 1975) (holding that exhaustion under § 1552 was not required in challenge to military policies regarding drug abuse; constitutional issues involved were "purely legal," and as a result, "no significant interest is served" by requiring exhaustion). We see no indication that Congress intended these civilian boards to adjudicate the merits of legal arguments like those Cossio presents here. Instead, "[t]he legislative history of § 1552, as well as the provisions of the statute, indicate that the basic

purpose of the statute was to relieve Congress from consideration of private bills to correct injustices, usually of the type involving an appropriation of money ….” *United States ex rel. Brooks v. Clifford*, 412 F.2d 1137, 1139–40 (4th Cir. 1969) (holding that board review under § 1552 was not required for district court to adjudicate military member’s conscientious objection claim because “§ 1552 was not intended to affect judicial jurisdiction”).

Boards under § 1552 are composed of civilian employees of the military who are not required to have legal training and who would not be equipped to perform the district court’s job in this case. Congress did not provide or intend for these boards to interpret criminal statutes and evolving Supreme Court precedent. Requiring exhaustion here would force civilian boards to act as judges of federal criminal and constitutional law.

The Air Force’s arguments in favor of an exhaustion requirement are not persuasive. First, the Air Force concedes in its brief that “under § 1552, military corrections boards cannot overturn court-martial convictions or sentencing judgments.” According to the Air Force, “[i]t is evident that the procedure set forth by [§ 1552] has no bearing on his case.” In essence, we agree. That’s why we reject the failure-to-exhaust defense but affirm on the merits: Cossio is not required to exhaust any supposed administrative remedies by petitioning a board that could not grant him the relief he seeks, but the corollary of this point for the merits of the mandamus petition is that no official was subject to a mandatory duty to provide him that relief. Further, the Air Force’s reliance on *Shurland v. Air Force Bd. for Correction of Military Records*, No. 3:18CV770 (REP), 2019 WL 5410064 (E.D. Va. Sept. 24, 2019), report and

recommendation adopted, No. 3:18CV770, 2019 WL 5395410 (E.D. Va. Oct. 22, 2019), aff'd, 791 F. App'x 416 (4th Cir. 2020), and *Shaw v. Austin*, No. CV 20-2036 (RDM), 2023 WL 1438394 (D.D.C. Jan. 31, 2023), is misplaced. Neither case held that appeal to a civilian board is required under 10 U.S.C. § 1552 before seeking mandamus in a district court.

In *Shurland*, the court's decision centered on the timeliness of the petition. 2019 WL 5410064, at *2–*3. Exhaustion through the civilian board was not at issue because, unlike Cossio, the plaintiff in *Shurland* petitioned the board multiple times before filing in the district court (albeit 35 years after the complained-of discharge). *Id.* at *8. *Shaw* is similarly inapposite. After lodging a whistleblower complaint alleging illicit gambling among instructors in a Navy training program, the *Shaw* plaintiff's promotion was delayed pending the outcome of an investigation into his unrelated activities. 2023 WL 1438394 at *1–*2. Following a finding by the Navy Inspector General that the investigation of the plaintiff "was initiated in retaliation for Shaw's protected, whistleblower activities," the Assistant Secretary of the Navy for Manpower and Reserve Affairs ordered the Chief of Navy Personnel to "determine whether Lt. Shaw's professional or promotion opportunities may have been impacted as a result of reprisal, retaliation and restriction ... and[,] if so, ... to take remedial action." *Id.* at *2 (alterations in original; internal quotation marks omitted). The assistant secretary, however, permitted a second investigation of Shaw to continue. *Id.*

Believing the delay in his promotion caused by the investigations was unjust, Shaw asked the court to order "the Secretary of the Navy to adhere to [his] obligations pursuant to 10 U.S.C. § 624, which establishes procedures for military

promotions, and the Military Whistleblower Protection Act of 1988 ('MWPA'), 10 U.S.C. § 1034, which requires the Secretary to take corrective action following a finding of retaliatory personnel action by the Inspector General." *Id.* at *4 (internal quotation marks omitted). After reviewing the plaintiff's complaint, the court reasoned that the "only relief that Shaw plausibly seeks in this case is the correction of his military records." *Id.* at *7.

The reasoning in *Shaw* does not require Cossio to petition the civilian board in this case. First, the court in *Shaw* chose not to address the parties' "battle over whether Shaw was required to exhaust his administrative remedies" because that dispute "misses the point." *Id.* at *9. The court concluded that the issue was whether Shaw's claims were final, allowing for review under the Administrative Procedure Act, and accordingly declined to address the exhaustion issue. *Id.* Next, unlike Cossio, the plaintiff in *Shaw* accused the Navy of violating 10 U.S.C. § 1552. The court explained: "Regardless of whether exhaustion [was] invariably required … a plaintiff cannot plausibly allege that a military department has violated § 1552 by failing to correct his military record when that plaintiff failed even to initiate the § 1552 process by filing a request for correction with the relevant board." *Id.* Unlike the plaintiff in *Shaw*, Cossio does not allege that the Air Force violated § 1552(a). Instead, he argues that § 1552 imposes a duty on the Secretary to void his court-martial conviction.

The Air Force does not argue that Cossio failed to exhaust under § 1552(b). It also does not argue that the waivable three-year limit on a request for correction under § 1552(a)(1) applies, so we do not address how that provision may bear on Cossio's case. Nor does the Air Force argue that Cossio failed

to file a request with anyone other than the board. We thus do not consider whether a service member may satisfy § 1552(b) by filing a request with another entity and do not decide whether Cossio failed to exhaust by failing to file a request with some non-board entity. We hold that Cossio did not need to petition the civilian board before filing this action. His petition fails instead on the merits, as we explain next.

B. *Nondiscretionary Duty*

Cossio's mandamus claim fails because the Secretary of the Air Force has no nondiscretionary duty to provide the relief he seeks. "It is manifest that the judiciary cannot compel through a writ of mandamus a federal official to perform any function unless the official is clearly directed by law to perform such a duty." *Save the Dunes Council v. Alexander*, 584 F.2d 158, 162 (7th Cir. 1978). Nothing in § 1552 or in the case law applying it compels the Air Force to change Cossio's discharge status.

The statute provides that the Secretary "may correct any military record" when "the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). Courts have interpreted this language to allow the Secretary to exercise "his discretion not to correct an error upon which nothing turns by reason of mootness, lack of harm to the person in question, or inability by such correction to redress the harm claimed." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). There may be instances in which "the alteration of a record may correct one injustice only to commit another, or perhaps only to incur some other equally significant institutional cost." *Id.* The critical point is that this balancing "is to be done by the Secretary, free of judicial second-guessing" because "[s]uch determinations are well

within his discretion." *Id.* Certainly, the Secretary "may correct any military record" when "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). But the Secretary is not *required* to do so. "[W]here there is discretion … even though its conclusion be disputable, it is impregnable to mandamus." *United States ex rel. Alaska Smokeless Coal Co. v. Lane*, 250 U.S. 549, 555 (1919) (affirming denial of petition for mandamus that sought to order approval of coal claims because Land Office exercised statutorily prescribed discretion in rejecting claims).

To highlight the weakness of Cossio's mandamus claim, consider the relief he seeks. Cossio argues that the Secretary has a duty to grant him a resentencing or a change in discharge status under § 1552(a). But regarding courts-martial, the Secretary's discretion under § 1552(a) "may extend only to—(1) correction of a record to reflect actions taken by reviewing authorities under chapter 47 of this title (or under the Uniform Code of Military Justice (Public Law 506 of the 81st Congress)); or (2) action on the sentence of a court-martial for purposes of clemency." 10 U.S.C. § 1552(f)(1)–(2). Cossio does not argue that § 1552(f)(1) applies. Nor does he seek clemency under § 1552(f)(2). Not only is there no nondiscretionary duty to provide Cossio with the relief he seeks, as explained above, Cossio's requested relief is not even available under § 1552. In sum: Cossio has no nondiscretionary right to relief under 10 U.S.C. § 1552(a) and any wrong is not redressable under 10 U.S.C § 1552(f), so he is not entitled to a writ of mandamus under 28 U.S.C. § 1361.

C.  *Clear and Indisputable Right to the Writ*

Even if the Secretary were to have a nondiscretionary duty to provide Cossio with the relief he seeks**,** Cossio's claims would still fail because he was given full constitutional protection and has no clear and indisputable right to a writ of mandamus. Cossio has challenged his convictions many times, and courts have fairly reviewed his claims. Courts have declined to issue writs of mandamus even when confronting allegations of grave constitutional violations. See e.g., *Smith v. McNamara*, 395 F.2d 896, 900 (10th Cir. 1968) (affirming district court's denial of mandamus under theory of constitutionally inadequate counsel because petitioner received full constitutional protection "when the prosecuting officer was apparently also untrained in the law" and petitioner was "represented by legally trained counsel on his petition for new trial and all issues relevant to the conduct of the court martial were then raised, considered and decided"); cf. *Ashe v. McNamara*, 355 F.2d 277, 282 (1st Cir. 1965) (vacating denial of mandamus where "the record established very clearly that due process of law had been denied" because petitioner's counsel was ordered to represent co-defendant against interests of petitioner).

Unlike the petitioners in *Smith* and *Ashe*, Cossio does not argue that some procedural infirmity offended his constitutional rights. Also, unlike the comparatively sparse procedural history in *Smith* and *Ashe*, Cossio has had access to many prior avenues to seek relief. See *Smith*, 395 F.2d at 898 n.3 (petitioner "did not seek review of the Board's action by the U.S. Court of Military Appeals"); see also *Ashe*, 355 F.2d at 278 (discussing procedural history). This case is only Cossio's

most recent of many attempts to have courts reweigh the legal and factual sufficiency of his convictions.

He argues that his larceny conviction is "void" because no evidence was introduced to show either that Cossio or the other airman ever possessed the paycheck or that it was tangible property. This argument was available to Cossio at every step of the extensive litigation, including his original trial in 2004 and his direct appeal. He did not raise it until almost two decades after his trial. Cossio also fails to acknowledge that the definition of larceny under 10 U.S.C. § 921(a) includes theft of "money."

Given the ubiquity of digital transfers of money today, Cossio is asking this court to adopt—in this belated collateral review, no less—an extreme interpretation of 10 U.S.C. § 921 that would limit its application to only physical checks or cash. The cases Cossio cites do not support this implausible interpretation. None involved digital transfers of funds. See *United States v. Firth*, 64 M.J. 508, 512–13 (A. Ct. Crim. App. 2006) (reversing larceny conviction under Article 121, UCMJ, when defendant copied fellow service member's debit card number but did not take the debit card itself); *United States v. Holley*, 42 M.J. 779, 780–82 (N-M Ct. Crim. App. 1995) (reversing larceny conviction because defendant's "mere recording of the numbers without taking physical possession of the cards did not constitute larceny or wrongful appropriation within the meaning of Article 121, UCMJ"); *United States v. Stevens*, 75 M.J. 548, 550–51 (N-M. Ct. Crim. App. 2015) (reversing larceny conviction because digital music, online videogames, and virtual goods purchased by defendant did not constitute "property" under Article 121, UCMJ).

Both *Firth* and *Holley* distinguished between copying card numbers and theft of the physical form of payment. See *Firth*, 64 M.J. at 512–13; see also *Holley*, 42 M.J. at 780–81. Cossio's act—rerouting electronic transfer of his colleague's pay to a Siberian orphanage—is more akin to theft of physical forms of payment, which courts have routinely found criminal under Article 121. See *United States v. Cohen*, 12 M.J. 573, 575 (A.F.C.M.R. 1981) (affirming larceny conviction under Article 121, UCMJ, for stealing government checks and giving them to a third party); see also *United States v. Christy*, 18 M.J. 688, 690 (N-M. C.M.R. 1984) (affirming larceny conviction under Article 121, UCMJ, where defendant made personal purchase with government credit card and government disbursed funds); *United States v. Lepresti*, 52 M.J. 644, 648–49 (N-M. Ct. Crim. App. 1999) (affirming larceny conviction under Article 121, UCMJ, where defendant stole checks and used another service member's credit card to make purchases).

Articles 121 and 134 of the UCMJ cover charges stemming from identity theft and wire fraud, which may fit more closely Cossio's actions here. See *United States v. Smith*, No. 201600417, 2017 WL 3225010, at *1–*2 (N-M. Ct. Crim. App. July 31, 2017) (affirming convictions under Articles 121 and 134 where Marine accessed recruits' "personal information, including social security numbers, birth dates, and [bank] account numbers" and "used that information to gain access to 15 recruits' [bank] accounts and electronically transferred over $13,000.00 from their accounts into his own [bank] account"). Whether under a theory of larceny, wire fraud, or identity theft, Cossio's actions clearly violated Articles 121 and 134 of the UCMJ. Even if we were to address the merits of Cossio's arguments at this late stage, his diversion of the

other airman's pay to the Siberian orphanage was criminal under the relevant statutes.

Cossio's arguments against his conviction under the Computer Fraud and Abuse Act are not frivolous, but none cure the defects in his petitions for writs of habeas corpus and mandamus. Further, his challenge under *Van Buren* has already been addressed and rejected. See *In re Cossio*, Misc. Dkt. No. 2021-04, 2021 WL 6105497, at *5 (A.F. Ct. Crim. App. Dec. 20, 2021) (denying Cossio's petition for mandamus: "This court has consistently found over the course of the extended litigation on this case that there was overwhelming evidence in the record of trial to support the court-martial's findings of guilty for computer fraud and abuse.") (internal quotation marks omitted).

Cossio does not address the required elements of mandamus. He does not argue, nor could he, that the Secretary owes him a nondiscretionary duty to provide the relief he seeks. He has received full constitutional protection at every turn of this litigation and has no clear right to relief. In this case, Cossio asks yet another court to reweigh evidence and to reconsider rejected legal theories. This is not the domain of mandamus. Mandamus is "an extraordinary remedy, reserved only for extraordinary circumstances." *In re Bluewater Network*, 234 F.3d 1305, 1316 (D.C. Cir. 2000) (issuing a writ of mandamus to compel the Coast Guard after more than ten years of non-compliance to promulgate congressionally mandated regulations). This is not such a circumstance.

The district court's judgment is AFFIRMED.